2020 IL App (1st) 152310
No. 1-15-2310

SECOND DIVISION
January 5, 2021

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 91 CR 22152 (02) |
| | ) | |
| JEROME JOHNSON, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Timothy Joseph Joyce, |
| | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court, with opinion.
Justices Lavin and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Jerome Johnson, appeals from the trial court's denial of his motion for leave to file a successive postconviction petition under section 122-1(f) of the Post-Conviction Hearing Act (Postconviction Act) (725 ILCS 5/122-1(f) (West 2014)). Defendant's successive postconviction petition was based, in relevant part, on his claim that he was coerced into confessing that he was involved in the murder of a 14-year-old girl. On appeal, defendant argues that the trial court erred in denying him leave to file his successive petition because he stated the gist of cause in that he had newly discovered evidence of systematic police torture of suspects, which he could not have discovered earlier, that corroborated his claim that he was coerced into confessing to the

charged crimes. In addition, plaintiff argues that he was prejudiced in that the coerced confession was used as the factual basis of his guilty plea, thus violating his right to due process and rendering his plea involuntary. For the reasons that follow, we conclude that the trial court did not err in denying defendant's motion for leave to file a successive postconviction petition because, by pleading guilty, defendant waived any claim that his confession was coerced.

¶ 2                                          BACKGROUND

¶ 3        In September 1994, defendant pleaded guilty to first degree murder and attempt first degree murder in exchange for a sentence of 30 years' imprisonment on the first degree murder conviction, to run concurrently with a sentence of 20 years' imprisonment on the attempt first degree murder conviction. Prior to accepting defendant's guilty plea, the trial court admonished defendant that by pleading guilty, defendant was giving up his rights to be proven guilty beyond a reasonable doubt, a jury trial, confront and cross-examine witnesses, and present witnesses and evidence on his own behalf. The trial court also admonished defendant regarding the possible sentences on each of the charges. Defendant stated that he understood the rights that he was waiving by pleading guilty, that he still desired to plead guilty, that he was pleading guilty freely and voluntarily, and that no one was forcing him to plead guilty. Thus, the trial court accepted defendant's guilty pleas, and the State proffered the following factual basis for a finding of guilty:

> "The State believes the evidence would show that on the 9th of June, 1991, the defendant along with an Eric Clark and a George Anderson got into a fist fight in the area of 66th and Wolcott in Chicago, Cook County, Illinois; that after that fight the defendant along with the Eric Clark and George Anderson went to the home of a Gregory Reed and formed their conspiracy, their plan, to get revenge for that fight; that as part of that plan Antonio Nicholas, Gregory Reed and David Washington would shoot up that area of 66th and

Wolcott on behalf of the defendant and the defendant would later shoot up some people that were giving them trouble; that as part of that plan the defendant went home and got his [.]22 caliber revolver, Antonio Nicholas got a [.]380 and the defendant also picked up a [.]357 which he supplied to Antonio Nicholas, Gregory Reed and David Washington; that the defendant then went to the area of 66th and Wolcott and showed those persons the corner that he needed shot up and the people that he needed shot up; that he then waited for them in a nearby area while they went to that area and shot up the corner; that when they went to the area and shot up the corner they shot 14 year old Kathryn Miles in the chest, that they shot Sylvester Porch in the right arm and buttocks; that they shot Eric Burgin in the left leg, and that they shot Billy Warren in the right foot.

The State further believes the evidence would show that the defendant gave a handwritten statement detailing all of his actions."

After correcting that it was George Anderson and not defendant who waited nearby during the shooting, defendant stipulated to the factual basis. The trial court found the factual basis to be sufficient and entered findings of guilty.

¶ 4 After defendant waived his right to a presentence investigation but prior to the trial court imposing the sentence, defendant presented the trial court with a note he had written, which the trial court read into the record:

"Dear Judge Urso: I, Jerome Johnson, am thankful for the kindness and understanding that yourself and the State's Attorneys have expressed throughout this entire proceedings. I, Jerome Johnson, am also thankful for the offer. Although I made a couple of mistakes that were severe which have to be paid for I ask not only for myself but for my son which is four years old, his mom Donna, my girlfriend and soon to be wife, my mom and sisters that

you would consider 20 years so that I could get out in time enough to pursue my—to prevent my son from being misled as I was. I'm asking for 20 years—if asking for 20 years is too much would you consider 25 years or an agreement for a time cut after five years with no problems and a few certifications from school? I know it may seem that I'm asking for a lot but I'm only asking for a chance to utilize the skills I realized I have. Thank you and God bless you."

Ultimately, the trial court imposed the agreed-upon sentence.

¶ 5        Just a few weeks after pleading guilty, defendant filed a *pro se* motion to vacate his guilty plea, alleging that trial counsel was ineffective for failing to investigate potential defenses, interview witnesses, and failing to pursue suppression motions. The trial court denied defendant's motion after a hearing, and that decision was affirmed on appeal. *People v. Johnson*, No. 1-95-0338 (1997) (unpublished order under Illinois Supreme Court Rule 23). Defendant did not argue police coercion at that time.

¶ 6        In 1998, defendant filed his initial postconviction petition, which was dismissed without an evidentiary hearing. This petition does not appear in the record on appeal, so we cannot ascertain the allegations it contained. Defendant acknowledges in his motion for leave to file a successive postconviction petition, however, that the initial petition was filed and dismissed.

¶ 7        In July 2011, defendant filed a second motion to vacate his guilty plea, this time arguing that he would not have pleaded guilty had the State not suppressed evidence of systematic police torture that was similar to the abuse that defendant claims he experienced leading up to and resulting in his confession. The trial court denied defendant's motion as untimely.

¶ 8        On October 11, 2012, defendant filed the motion for leave to file a successive postconviction petition that is the subject of the present appeal. In that motion and in the successive

postconviction petition attached to it, defendant alleged that during police questioning at Area 3 of the Chicago Police Department, he was "kicked, slapped, and unnecessarily handcuffed in an awkward position that required him to sit awkwardly in an overheated locker room." Defendant alleged that officers and detectives Stark, Kill, Halloran, Boudreau, Smith, Stehlik, and O'Brien participated in the questioning and abuse of him. In his attached affidavit, defendant elaborated that on August 21, 1991, he was arrested and taken to Area 3 headquarters where he was placed in what appeared to be a locker room and was cuffed to a ring on the wall. While awkwardly cuffed to that ring, officers slapped him, kicked his handcuffs, and threatened him repeatedly over the course of three days. Officers also forced him to sign an already partially written confession. Officers told defendant that they knew he had not shot anyone, but that if he told them what they wanted, he could go home. Defendant could not say how many officers participated in his abuse because they all looked the same to him, but there were never more than two in the room at a time.

¶ 9        As a result of the abuse, defendant alleged, he confessed to a crime[1] that he did not commit. Defendant also alleged that the State covered up the systematic practice of abuse and torture of suspects in Area 3, resulting in an inability by trial counsel to provide defendant with effective assistance and denying him a fair suppression hearing.[2] According to defendant, the coerced confession and the State's cover up of systematic abuse rendered defendant's plea involuntary and not knowingly made. Defendant also noted that there were no eyewitnesses to testify against him, no physical evidence against him, and his guilty pleas were supported by only his illegally obtained confession.

---

[1]Defendant did not specify what crime he confessed to, but we presume that he is referring to the offenses he was convicted of in the present case.

[2]The record on appeal does not contain any motion to suppress defendant's confession based on coercion nor does it contain a report of proceedings of a hearing on a motion to suppress. In his successive postconviction petition, however, defendant indicates that he did, in fact, move to suppress his confession based on his claims of coercion.

¶ 10      As cause for failing to raise these claims in his initial postconviction petition, defendant alleged that there was newly discovered evidence of systematic torture of suspects and of the concealment of evidence regarding the systematic torture. He also alleged newly discovered evidence in the form of the Illinois Torture Inquiry and Relief Commission's (TIRC) disposition of codefendant George Anderson's claim of police abuse, which was issued on June 13, 2012, and a letter from the TIRC stating that its funding had been eliminated before it could address defendant's claims.

¶ 11      The TIRC's disposition on Anderson's claim and the TIRC's letter to defendant were attached to defendant's successive postconviction petition. The TIRC's disposition of Anderson's abuse claim stated that Anderson alleged that following his arrest on August 21, 1991, he was taken to Area 3 where he was questioned by Detectives Kill, Boudreau, and Halloran. During this questioning, Anderson was beaten repeatedly, kicked on the wrists while handcuffed to the wall, and threatened with additional beatings if he did not sign a confession written by the state's attorney. Later, after Anderson was taken to another room and handcuffed with his arms over his head, Detective O'Brien held a telephone book over Anderson's left side while Detective Stehlik struck Anderson with a black rubber hose multiple times. Anderson alleged that as a result of this abuse, he signed a confession to a second murder. After reviewing the submitted evidence, the TIRC concluded that Anderson's abuse claim was "credible and merit[ed] judicial review."

¶ 12      With respect to the newly discovered evidence of systematic torture and state-sponsored cover up of that systematic torture, defendant referred to other torture cases involving the officers he alleged abused him. According to defendant, accounts of these other torture cases could be found in "a report critical of the special state's attorney's report concerning the Burge investigation on police abuse" and documents entitled "To Fairly Investigate Torture in Chicago, Also 107

Known Burge Area 2 and 3 Torture Victims 1972-1991." Defendant did not provide any further identifying information regarding these documents nor did he attach them to his motion or successive postconviction petition.

¶ 13    In September 2014, defendant filed a "Motion to Include Supplemental Argument," in which he sought to include additional claims in his successive postconviction petition. These claims all related to defendant's allegation that the trial court erroneously considered defendant eligible for the death penalty. Because these claims are not relevant to defendant's claims in this appeal, we do not address them in depth.

¶ 14    Finally, on June 25, 2015, the trial court entered an order denying defendant's motion for leave to file a successive postconviction petition. In that order, the trial court held that defendant failed to establish cause and prejudice for not raising his coercion claim in an earlier proceeding. More specifically, with respect to cause, the trial court found that defendant did not establish an objective factor that prevented defendant from raising his coercion claim earlier. In fact, the trial court noted, defendant had raised his coercion claim prior to pleading guilty, but was unsuccessful, and then chose to abandon his coercion claim in exchange for pleading guilty. The trial court also noted that defendant's evidence that others had been abused was not newly discovered evidence but instead was just additional circumstances that might have benefitted defendant's claim. With respect to prejudice, the trial court found that it was lacking because defendant's confession was never introduced as substantive evidence against him at trial. In so finding, the trial court relied on *People v. Phelps*, 51 Ill. 2d 35, 38 (1972), in which the Illinois Supreme Court held that the voluntariness of the defendant's confession was irrelevant where he had voluntarily pleaded guilty because a voluntary guilty plea waived all nonjurisdictional issues. As for defendant's claim that he had received ineffective assistance of counsel, the trial court found it to be conclusory in that it

did not identify which counsel defendant was complaining of or provide a factual basis for his claim that counsel's representation was inadequate.

¶ 15 Following the trial court's denial, defendant then instituted this timely appeal.

¶ 16 After defendant filed his opening brief in this appeal, the TIRC issued a disposition on defendant's TIRC claim. In that disposition, the TIRC found sufficient evidence of police torture of defendant to warrant judicial review of defendant's torture claim and referred the matter to the chief judge of the circuit court of Cook County for further review. We then stayed this appeal pending resolution of defendant's TIRC claim in the trial court. On October 2, 2020, the trial court granted the State's motion to dismiss defendant's TIRC claim on the basis that defendant's voluntary guilty plea waived defendant's constitutional claim regarding the voluntariness of his confession. It is unknown to us at the time of this writing whether defendant has instituted an appeal from the trial court's dismissal of his TIRC claim.

¶ 17                                                    ANALYSIS

¶ 18 On appeal, defendant argues that the trial court erred in denying him leave to file his successive postconviction petition. Generally, a defendant is permitted to file only one postconviction proceeding. *People v. Edwards*, 2012 IL 111711, ¶ 22. Section 122-1(f) of the Postconviction Act, however, permits a defendant to file a successive postconviction petition with leave of court. 725 ILCS 5/122-1(f) (West 2014). To obtain such leave, the defendant must demonstrate cause for failing to raise the claim in his initial postconviction petition and prejudice to him resulting from that failure. *Id.* Section 122-1(f) further explains the cause and prejudice requirements:

"For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-

conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.*

¶ 19 The burden to obtain leave to file a successive postconviction petition is on the defendant (*Edwards*, 2012 IL 111711, ¶ 24), and to meet the cause-and-prejudice requirement, a defendant must allege facts demonstrating cause and prejudice and must submit sufficient documentation to allow the trial court to determine that cause and prejudice exist (*People v. Smith*, 2014 IL 115946, ¶¶ 34-35). In other words:

"leave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Id.* ¶ 35.

In determining whether the defendant has met this burden, the court must take all well-pleaded facts and supporting affidavits as true. *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 25. Our review of the trial court's denial of the defendant's motion for leave to file a successive postconviction petition is *de novo*. *Id.*

¶ 20 On appeal, defendant contends that he satisfied the cause and prejudice requirement in his motion for leave to file a successive postconviction petition. According to defendant, he alleged cause in that the TIRC's disposition of Anderson's abuse claim was not available to defendant at the time he filed his initial postconviction petition. Defendant contends that Anderson's TIRC disposition corroborated defendant's claim of police abuse because Anderson alleged that he was abused by the same officers as defendant and in a similar manner. With respect to prejudice,

defendant argues that he was prejudiced in that the allegedly coerced confession was the sole source of information for the factual basis of his guilty plea, which violated his due process rights and rendered his guilty plea involuntary. Defendant makes no argument on appeal regarding any evidence other than the TIRC's disposition on Anderson's claim nor does he make any other arguments on appeal regarding ineffective assistance of counsel or other effects of his allegedly coerced confession. We conclude that the trial court did not err in denying defendant leave to file his successive postconviction petition because defendant's guilty plea resulted in waiver of his claims regarding the voluntariness of his confession.

¶ 21     It has been long established in Illinois caselaw that a voluntary guilty plea waives all nonjurisdictional errors, including constitutional defects. See, *e.g.*, *People v. Del Vecchio*, 105 Ill. 2d 414, 432-33 (1985); *Phelps*, 51 Ill. 2d at 38; *People v. Mueller*, 2013 IL App (5th) 120566, ¶ 12; *People v. Anderson*, 375 Ill. App. 3d 121, 133 (2006); *People v. Stice*, 160 Ill. App. 3d 132, 138 (1987). Claims that a defendant's confession was coerced are no exception. The United States Supreme Court has held that "a plea of guilty in a state court is not subject to collateral attack in a federal court on the ground that it was motivated by a coerced confession unless the defendant was incompetently advised by his attorney." *McMann v. Richardson*, 397 U.S. 759, 772 (1970); see also *Class v. United States*, 583 U.S. ___, ___, 138 S. Ct. 798, 805 (2018) ("A valid guilty plea also renders irrelevant—and thereby prevents the defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is entered."). This is because "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); see also *People v. Smith*, 383 Ill. App. 3d 1078, 1085 (2008) (same). Likewise, Illinois courts have repeatedly held that claims regarding the voluntariness of defendants' confessions are barred by the rule that voluntary guilty pleas

waive all nonjurisdictional defects. See, *e.g.*, *Phelps*, 51 Ill. 2d at 38 ("It is unnecessary to determine the legality of petitioner's original detention or the voluntary nature of his confession since a voluntary plea of guilty waives all nonjurisdictional errors."); *Stice*, 160 Ill. App. 3d at 138-39 (where defendant voluntarily pleaded guilty, admitted his wrongdoing, and used the relinquishment of his right to challenge his confession as a bargaining chip in negotiating a recommended sentence).

¶ 22     In *McMann*, the United States Supreme Court explained in detail why a defendant's ability to challenge his plea based on claims of a coerced confession is limited:

"For the defendant who considers his confession involuntary and hence unusable against him at a trial, tendering a plea of guilty would seem a most improbable alternative. The sensible course would be to contest his guilt, prevail on his confession claim at trial, on appeal, or, if necessary, in a collateral proceeding, and win acquittal, however guilty he might be. The books are full of cases in New York and elsewhere, where the defendant has made this choice and has prevailed. If he nevertheless pleads guilty the plea can hardly be blamed on the confession which in his view was inadmissible evidence and no proper part of the State's case. Since by hypothesis the evidence aside from the confession is weak and the defendant has no reasons of his own to plead, a guilty plea in such circumstances is nothing less than a refusal to present his federal claims to the state court in the first instance—a choice by the defendant to take the benefits, if any, of a plea of guilty and then to pursue his coerced-confession claim in collateral proceedings. Surely later allegations that the confession rendered his plea involuntary would appear incredible, and whether his plain bypass of state remedies was an intelligent act depends on whether he was so

incompetently advised by counsel concerning the forum in which he should first present his federal claim that the Constitution will afford him another chance to plead.

A more credible explanation for a plea of guilty by a defendant who would go to trial except for his prior confession is his prediction that the law will permit his admissions to be used against him by the trier of fact. At least the probability of the State's being permitted to use the confession as evidence is sufficient to convince him that the State's case is too strong to contest and that a plea of guilty is the most advantageous course. Nothing in this train of events suggests that the defendant's plea, as distinguished from his confession, is an involuntary act. His later petition for collateral relief asserting that coerced confession induced his plea is at most a claim that the admissibility of his confession was mistakenly assessed and that since he was erroneously advised, either under the then applicable law or under the law later announced, his plea was an unintelligent and voidable act. The Constitution, however, does not render pleas of guilty so vulnerable." (Emphasis omitted.) *McMann*, 397 U.S. at 768-69.

¶ 23 Here, defendant chose to plead guilty to the charges against him, and the record demonstrates that defendant did so knowingly and voluntarily. The record reveals that prior to accepting defendant's guilty plea, the trial court admonished defendant that by pleading guilty, defendant was giving up his rights to be proven guilty beyond a reasonable doubt, a jury trial, confront and cross-examine witnesses, and present witnesses and evidence on his own behalf. The trial court also admonished defendant regarding the possible sentences on each of the charges. Defendant stated that he understood the rights that he was waiving by pleading guilty, that he still desired to plead guilty, that he was pleading guilty freely and voluntarily, and that no one was forcing him to plead guilty. In addition, defendant acknowledged his culpability in his letter to the

court by stating, "I made a couple of mistakes that were severe which have to be paid for \*\*\*."[3] The record also reveals that he pleaded guilty in exchange for a specific sentence. The only reasonable conclusion to be drawn from these facts is that defendant's plea was, indeed, voluntary. See *Phelps*, 51 Ill. 2d at 37-38 (where the record reflected that the trial court admonished the defendant as to the nature of the charges, the possible sentences, and the rights defendant was relinquishing by pleading guilty; the defendant admitted his actions, expressed his regret, and acknowledged his satisfaction with counsel; and the record indicated that the defendant's plea was entered in return for a specific sentence, the only reasonable conclusion to be drawn was that the defendant's plea was knowingly and understandingly entered).

¶ 24    Defendant makes the conclusory claim that the coerced confession rendered his plea involuntary, but he does not articulate exactly how the allegedly coerced confession rendered his plea involuntary. For example, he makes no contention that the confession somehow motivated him to plead guilty or that he would not have pleaded guilty had he not confessed. Even if he had made such a contention, the fact that his coerced confession motivated him to plead guilty does not preclude the application of the waiver rule. See *id.* at 38 ("[T]hat petitioner may have been motivated by his coerced confession does not invalidate his otherwise knowing and intelligent plea of guilty [citations], since that plea represented a voluntary and intelligent choice of the alternatives available to him."); *Stice*, 160 Ill. App. 3d at 138 ("We conclude that it is of no consequence that defendant's decision to plead guilty was influenced by the prospect of the admission of his confession. The defendant's perception of his chances of prevailing on the suppression motion,

---

[3]Although defendant did not specifically identify the charged offenses as the mistakes he made, he did refer to the mistakes as ones that had to be paid for and then went on to request a sentence of 20 years' imprisonment on the charged offenses. This suggests that defendant was, in fact, referring to the charged offenses when he acknowledged his culpability.

like his perception of his chances of prevailing at trial, was a legitimate consideration in the plea negotiations.").

¶ 25    Instead, defendant only argues on appeal that the allegedly coerced confession served as the sole source of information for the plea's factual basis. This, however, has been held to be an insufficient basis on which to excuse defendant's waiver of any nonjurisdictional claims leading up to his plea. See *Anderson*, 375 Ill. App. 3d at 133 (where the defendant voluntarily pleaded guilty, his claim that his due process rights were violated where his allegedly coerced confession was used as the factual basis for his guilty plea was waived); *Stice*, 160 Ill. App. 3d at 138 ("We find that while the prosecutor referred to the defendant's confession in reciting the factual bases of the defendant's crimes to the court, it is apparent that the defendant, in pleading guilty, acknowledged the truth of the facts contained in the confession—and not just the fact that he had made a confession."). As the United States Supreme Court has stated, a guilty plea is typically based on the defendant's own admission that he committed the acts comprising the charged crimes. *McMann*, 397 U.S. at 766.

¶ 26    We note that the only method by which a defendant may challenge alleged constitutional defects that occurred prior to his guilty plea is to establish that he was incompetently advised by counsel to plead guilty. *Id.* at 772 ("As we have previously set out, a plea of guilty in a state court is not subject to collateral attack in a federal court on the ground that it was motivated by a coerced confession unless the defendant was incompetently advised by his attorney."); see also *Tollett*, 411 U.S. at 267 ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the

advice he received from counsel was not within the standards set forth in *McMann*.”). As was explained in *McMann*,

> “[w]hether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession erroneously thought admissible in evidence depends on an initial matter, not on whether a court would retrospectively consider counsel’s advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases.” *McMann*, 397 U.S. at 770-71.

¶ 27    Here, although defendant did include references to ineffective assistance of counsel in his motion for leave to file a successive postconviction petition, he has made no contention on appeal that he was incompetently advised by counsel in the proceedings leading up to and culminating in his guilty plea, resulting in forfeiture of any such argument. See *People v. LaPointe*, 365 Ill. App. 3d 914, 922 (2006) (where a defendant does not raise claims on appeal that he included in his motion for leave to file a successive postconviction petition, he waives them and they will not be considered). Moreover, as the reviewing court, we are not permitted to raise and rule upon issues that are not raised and argued by the parties as a means of reversal. See *People v. Givens*, 237 Ill. 2d 311, 323 (2010) (noting that “Illinois law is well settled that other than for assessing subject matter jurisdiction, ‘a reviewing court should not normally search the record for unargued and unbriefed reasons to *reverse* a trial court judgment’ ” and holding that the appellate court erred in reversing the matter on grounds that were not raised or argued by the defendant (emphasis in original) (quoting *Saldana v. Wirtz Cartage Co.*, 74 Ill. 2d 379, 386 (1978))).

¶ 28    Even if defendant had not forfeited any issue of ineffective assistance, we note that the claims of ineffective assistance of counsel in his motion for leave to file a successive postconviction petition appear to revolve around the proposition that trial counsel was prevented

from providing competent advice by the State's concealment of evidence of systematic abuse. Counsel cannot, however, be expected to advise defendant based on evidence that was hidden by the State or that did not exist at the time. Further, defendant does not contend that counsel provided him with erroneous advice regarding his decision to plead guilty based on the information that was actually available to defendant and trial counsel at the time. Thus, defendant did not sufficiently plead ineffective assistance that would, even if proven, excuse the waiver resulting from his guilty plea.

¶ 29     Defendant argues that the Illinois Supreme Court's holding in *People v. Wrice*, 2012 IL 111860, ¶ 71—that "use of a defendant's *physically* coerced confession as substantive evidence of his guilt is never harmless error" (emphasis in original)—somehow alters the principle that a voluntary guilty plea waives all nonjurisdictional defects, at least in the context of claims involving a physically coerced confession. We disagree that the decision in *Wrice* had any effect on the waiver that results from a voluntary guilty plea.

¶ 30     In *Wrice*, the defendant was convicted following a jury trial. *Id.* ¶ 37. Years later, the defendant sought leave to file a successive postconviction petition, alleging that he was physically abused by police, resulting in the confession that was used as evidence against him at trial. *Id.* ¶ 41. In support, he attached a copy of a report on widespread police abuse of suspects by Chicago police around the time he was arrested. *Id.* The trial court denied the defendant's request for leave to file a successive postconviction petition. *Id.* ¶ 43. On appeal, the State conceded that the defendant had adequately pleaded cause based on the fact that the attached report was not previously available to the defendant but disagreed with the Illinois Supreme Court's holding in *People v. Wilson*, 116 Ill. 2d 29, 41 (1987), that use of a coerced confession as substantive evidence against a defendant could never be harmless error. *Wrice*, 2012 IL 111860, ¶ 49. After examining

the United States Supreme Court's decision in *Arizona v. Fulminante*, 499 U.S. 279 (1991), the Illinois Supreme Court amended the *Wilson* rule to reflect that only the use of a *physically* coerced confession as substantive evidence against a defendant could never be harmless error. *Wrice*, 2012 IL 111860, ¶ 71.

¶ 31        The decision in *Wrice* has no application in the present matter for several reasons. First, *Wrice* did not address the issue of waiver resulting from voluntary guilty pleas. In *Wrice*, the defendant did not plead guilty but instead was convicted following a jury trial. *Id.* ¶ 37. Thus, the issue of waiver could not possibly have been within the realm of issues the *Wrice* court would have been called upon to address. Second, even if *Wrice* somehow could have or was intended to address the issue of the effect of a guilty plea on a defendant's ability to raise claims related to physically coerced confession, we find it difficult to believe that the *Wrice* court overturned such a longstanding and well established rule without even mentioning guilty pleas or any of the cases that have held that guilty pleas waive all nonjurisdictional defects. Third, the rule change announced in *Wrice* applies to situations where a physically coerced confession is introduced "as substantive evidence" against a defendant, again indicating that it was not intended to apply to situations like defendant's guilty plea, where he admitted in open court that he committed the charged crimes and stipulated to the factual basis.

¶ 32        Finally, the fact that use of a physically coerced confession as substantive evidence against a defendant can never be harmless error does not necessitate the conclusion that claims related to a physically coerced confession can never be waived. Defendant has cited no authority for the proposition that where an error is not harmless, it cannot be waived. See *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 207 (2007) ("Mere contentions, without argument or citation of authority, do not merit consideration on appeal and are waived."); *Obert v. Saville*, 253

Ill. App. 3d 677, 682 (1993) ("A reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented [citation], and it is not a repository into which an appellant may foist the burden of argument and research [citation]; it is neither the function nor the obligation of this court to act as an advocate or search the record for error [citation]."). If such were the case, to determine whether a defendant's guilty plea resulted in waiver of claims, courts would be required to first analyze whether each error alleged by the defendant was harmless. Yet, none of the cases that we have found or that the parties have cited have reflected any such analysis. Accordingly, we conclude that *Wrice* has no application here.

¶ 33   Defendant also contends that the case of *People v. Whirl*, 2015 IL App (1st) 111483, is instructive. In *Whirl*, after an unsuccessful motion to suppress his confession based on his claim of police coercion, the defendant pleaded guilty to murder and armed robbery. *Id.* ¶ 33. At no point did the defendant seek to withdraw his guilty plea or file a direct appeal. *Id.* ¶ 35. After an unsuccessful initial postconviction petition, the defendant sought leave to file a successive postconviction petition, alleging that his trial counsel was ineffective for failing to interview witnesses and obtain records regarding his torture claim and that he was actually innocent. Attached to his motion were several documents in support of his claim of police abuse. *Id.* ¶ 36. The trial court denied the defendant leave to file that successive petition, and the defendant appealed. *Id.* ¶¶ 38-39.

¶ 34   While his appeal was pending, the defendant filed a second motion for leave to file the successive postconviction petition, this time alleging that trial counsel was ineffective for advising him to plead guilty because the State was seeking the death penalty and for failing to call witnesses who could have corroborated that he was not involved in the murder. *Id.* ¶¶ 40-41. During the pendency of the defendant's second motion for leave, the TIRC issued its disposition on the

defendant's abuse claim, finding that there was sufficient evidence to conclude that the defendant's torture claim was credible and merited judicial review. *Id.* ¶ 45. Thereafter, the defendant's attorney filed an amended petition based on both the Postconviction Act and the Illinois Torture Inquiry and Relief Commission Act (Torture Inquiry Act) (775 ILCS 40/1 *et seq.* (West 2012)), renewing the defendant's claims that he was tortured by police into confessing. *Whirl*, 2015 IL App (1st) 111483, ¶ 50. The amended petition alleged newly discovered evidence regarding the pattern and practice by detectives in Area 2 of the Chicago Police Department in coercing false confessions. *Id.* The trial court held a combined evidentiary hearing on the defendant's claims under the Postconviction Act and the Torture Inquiry Act, after which it denied the defendant's amended petition. *Id.* ¶¶ 52, 70.

¶ 35        On appeal, the defendant argued that the trial court's denial of his second motion for leave to file a successive postconviction petition was manifestly erroneous. *Id.* ¶ 78. Based on the evidence presented at the evidentiary hearing, this court ultimately agreed, reversing and remanding the matter with directions that the defendant's guilty plea be vacated and that he be afforded a new suppression hearing and, if necessary, a new trial. *Id.* ¶ 110. Because the court concluded that the defendant was entitled to a new suppression hearing under the Postconviction Act, it did not address the defendant's identical claims under the Torture Inquiry Act. *Id.* ¶ 111.

¶ 36        Defendant relies on *Whirl* in an attempt to avoid the waiver resulting from his voluntary guilty plea by pointing out that the defendant in *Whirl* was granted relief under the Postconviction Act, even though he had pleaded guilty and had not withdrawn his plea. In doing so, defendant argues that, in *Whirl*, "this Court held that *despite the fact that Whirl's guilty plea was voluntary*, Whirl was entitled to relief under the [Postconviction Act]," "[t]he fact that Whirl pleaded guilty to the underlying murder did not preclude this Court from ordering post-conviction relief in *Whirl*,"

and "[i]t did not matter in *Whirl* that the successive post-conviction petitioner was convicted upon a guilty plea." (Emphasis in original.) The phrasing of defendant's contentions implies that the court in *Whirl* addressed the waiver rule and affirmatively concluded that it did not apply or that it would afford the defendant relief in spite of the waiver that typically results from guilty pleas. Such is not the case. Like *Wrice*, the decision in *Whirl* is completely silent on the issue of waiver resulting from guilty pleas. At no point in its decision did the *Whirl* court address the issue of waiver resulting from guilty pleas, much less indicate that its decision was reached in spite of it. Moreover, there is no indication that the State ever argued—either in the trial court or on appeal— that the defendant had waived all nonjurisdictional defects by voluntarily pleading guilty.

¶ 37    Given the full body of caselaw indicating that the waiver rule remains in full effect with no exception for claims of coerced confessions and the State's apparent forfeiture of the waiver argument in *Whirl*, we decline to equate the *Whirl* court's silence on the waiver issue with a holding that the waiver rule is no longer good law or does not apply in situations where the defendant claims that his confession was the result of police abuse and torture.

¶ 38    In sum, we have no choice but to conclude that the trial court did not err in denying defendant leave to file his successive postconviction petition based on his claim that his confession was coerced by police abuse. As disturbing as we find the alleged torture of defendant, longstanding federal and state caselaw specifically makes clear that where a defendant voluntarily pleads guilty, he waives all nonjurisdictional defects, including any claim that his confession was coerced by police torture. Regardless of our feelings about the effect of this rule when applied to the facts of this case, we are required, by law, to follow the precedent of higher courts. This is not an area of the law where there is room for differing interpretations or splitting hairs; the law cited in our above discussion makes perfectly clear that we are bound to conclude that defendant's guilty

plea resulted in the waiver of his claim of a coerced confession. Accordingly, we are compelled to affirm the trial court's denial of defendant's motion for leave to file a successive postconviction petition.

¶ 39      Despite this conclusion, we pause to acknowledge that the Chicago Police Department has a troubling history of now-well-documented police torture and abuse of young black men. Not only that, but science now tells us that an individual's brain continues to develop into his or her mid-20s and that emerging adults are mentally closer to juveniles than they are full adults, such that younger victims of police abuse are much more likely to succumb to the violent tactics. Caselaw has started to recognize the effect of this ongoing mental and emotional development in emerging adults in the context of sentencing and proportionate penalties. See, *e.g.*, *People v. House*, 2019 IL App (1st) 110580-B. It has not, however, been analyzed in the context of defendants who plead guilty to a crime after—and likely because of—being physically coerced into confessing. As an intermediate appellate court bound to apply the law as interpreted by higher courts, we are not in a position to afford defendant relief in this case in light of his guilty plea. We believe, however, that cases such as the present one, where defendant was 19 and clearly still an emerging adult at the time he claims that he was physically tortured into confessing by members of the Chicago Police Department, cry out for a reevaluation of the limits placed on defendants' ability to challenge the voluntariness of their confessions and the effect those allegedly coerced confessions had on their decision to plead guilty.

¶ 40      Notably, shortly before the issuance of this decision, our supreme court issued its decision in *People v. Reed*, 2020 IL 124940. In that case, the court held that a guilty plea does not preclude a defendant from pursuing a postconviction claim of actual innocence. *Id.* ¶ 41. Although this holding suggests that the wall guilty pleas place between criminal defendants and relief for

nonjurisdictional defects might not be quite as tall as once thought, it does not aid defendant in the present case, at least not at the moment, because he has not raised before us a claim of actual innocence. Although he claims that he was tortured into confessing to a crime that he did not commit, he makes no further argument on appeal regarding his innocence, either expressly or by implication. Accordingly, we do not have occasion to address the question of what effect the *Reed* decision might have on a claim by defendant that he is innocent of the crime of which he is convicted, and our decision does not reflect our opinion on the validity of any such claim that defendant might make in the future.

¶ 41 Finally, we note that the trial court dismissed, without an evidentiary hearing, defendant's TIRC claim on the same basis that we are affirming the trial court's earlier decision to deny defendant leave to file a successive postconviction petition. We do not and will not assess the legal and factual soundness of the trial court's decision on defendant's TIRC claim unless and until such an appeal is placed before this court. Accordingly, our decision in this appeal should in no way be construed as a reflection of our opinion on the propriety of the trial court's dismissal of defendant's TIRC claim.

¶ 42                                                    CONCLUSION

¶ 43 For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 44 Affirmed.

**No. 1-15-2310**

| | |
|---|---|
| **Cite as:** | *People v. Johnson*, 2020 IL App (1st) 152310 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 91-CR-22152(02); the Hon. Timothy Joseph Joyce, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Tomas G. Gonzalez, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Eugene Steingold, Special Assistant State's Attorney, of counsel), for the People. |