NOTICE
Decision filed 02/06/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230718-U

NO. 5-23-0718

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Hardin County. |
| | ) | |
| v. | ) | No. 22-CF-25 |
| | ) | |
| JAMES EVANS, | ) | Honorable |
| | ) | Tara R. Wallace, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice McHaney and Justice Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    (1) Defendant's claim of sentencing error is reviewable pursuant to 725 ILCS 5/115-4.1(g) where defendant specifically identified the denial of his section 115-4.1(e) motion and the underlying judgment and sentence in his notice of appeal; (2) the circuit court did not abuse its discretion in sentencing defendant; and (3) the defendant's imposed sentence is not manifestly disproportionate or excessive.

¶ 2    On January 27, 2023, the defendant, James Evans, pled guilty to one count of unlawful possession of methamphetamine less than five grams, a Class 3 felony. On March 21, 2023, the defendant failed to appear for his sentencing hearing and the circuit court sentenced him *in absentia* to nine years and six months' imprisonment. On June 2, 2023, the defendant's counsel requested a new sentencing hearing pursuant to section 115-4.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-4.1 (West 2022)), which was denied. On September 22, 2023, the defendant timely appealed. For the following reasons, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4     The defendant was charged, in the circuit court of Hardin County, with one count of unlawful possession of methamphetamine, a Class 3 felony, and one count of unlawful possession of a stolen vehicle, a Class 2 felony. On January 27, 2023, the defendant entered an open guilty plea to the charge of unlawful possession of methamphetamine. In exchange for the defendant's open guilty plea, the State dismissed the defendant's charge of unlawful possession of a stolen vehicle.

¶ 5     Before the circuit court accepted the defendant's open guilty plea, the circuit court informed the defendant that the State had filed a notice of extended-term sentencing. Additionally, the circuit court indicated that the State might pursue an extended-term sentence range for the defendant based on his history of criminality and delinquency.[1]

¶ 6     After admonishing the defendant and finding a factual basis for his open guilty plea, the circuit court informed the defendant that it was hesitant to release the defendant as part of the agreement for his open guilty plea. To remedy its concern, the circuit court ordered the defendant to stay in contact with pretrial services. Thereafter, the circuit court accepted the defendant's open guilty plea and ordered the defendant to be released from custody.

¶ 7     In addition, the circuit court advised the defendant that his sentencing hearing was set to occur on March 10, 2023. Upon doing so, the circuit court emphasized the need for the defendant to be present at his sentencing hearing by informing the defendant that if he failed to appear, the circuit court could sentence him *in absentia*.

---

[1]The record reveals that the defense counsel explained the notice of extended-term sentencing to the defendant before the circuit court found a factual basis for his open guilty plea.

¶ 8       On March 31, 2023,[2] the defendant was sentenced *in absentia*. The circuit court began the defendant's sentencing hearing by indicating that the defendant was absent. The circuit court inquired of defense counsel if she knew the whereabouts of defendant. Defense counsel advised that she had no knowledge as to where the defendant was located.

¶ 9       The circuit court noted the defendant was given a very specific warning about being sentenced regardless of his presence at the hearing. Prior to the State's presentation of evidence in aggravation, defense counsel made an oral motion for continuance and stated:

> "I do not know where he is. I did try to reach out to him this morning. I did not receive a response from him. I did attempt to reach out to him earlier this week, and I did not receive a response. *** He has responded when I have reached out to him in the past. He did not respond *** this week. I do not know if there's a basis for that. *** I'm requesting *** a brief continuance to allow him to be here."

The circuit court denied the motion to continue and noted it was not inclined to grant any continuance on the defendant's behalf because the defendant failed to maintain contact with pretrial services and failed to appear for his presentencing interview.

¶ 10      Following the denial, the circuit court addressed the State's notice of extended-term sentencing filed on January 27, 2023. The circuit court believed that the defendant's conviction carried a maximum sentence of 10 years' imprisonment in the Illinois Department of Corrections (IDOC). In addition, the defendant's conviction carried a possible probationary period of 30 months and a fine of up to $25,000. The State and defense counsel agreed, and the circuit court proceeded with defendant's sentencing hearing.

---

[2]On February 14, 2023, the State filed a motion to continue, indicating that defense counsel was aware of the State's motion to continue and did not object. On February 17, 2023, the court granted the State's motion and continued the defendant's sentencing hearing to March 31, 2023.

¶ 11    In aggravation, the State relied upon the presentencing investigations report (PSI) filed on March 21, 2023. The PSI detailed the defendant's criminal history, which included, *inter alia*, charges ranging from misdemeanors to felonies, including conspiracy to manufacture methamphetamine, classified as a Class 2 felony in Illinois, and possession of precursors with the intent to distribute methamphetamine, classified as a Class D felony in Indiana. Also indicated within the PSI was evidence that the defendant failed to follow up with pretrial services to schedule a presentencing interview. The Hardin County probation office (probation) mailed a letter with a reporting date of February 15, 2023, to the defendant. On February 15, 2023, probation attempted to contact the defendant after he failed to report to his presentencing interview. On February 16, 2023, probation reportedly tried to contact the defendant. Around this time, it was reported that multiple contact attempts were made by defense counsel. On March 13, 2023, contact was made with the defendant. On March 13, 2023, probation reportedly communicated to the defendant that his last opportunity to be interviewed would be on March 14, 2023, at 9 a.m., at their office. On March 14, 2023, the defendant failed to report for his presentencing interview.

¶ 12    In mitigation, defense counsel requested that the circuit court consider the fact that the defendant's crime was not a crime in which the defendant contemplated that there would be harm suffered to another. Nor did the defendant contemplate that his criminal conduct would cause or threaten harm to another. Additionally, defense counsel indicated that his criminal conduct neither caused nor threatened serious physical harm to another.

¶ 13    When called upon for a recommendation, the State recommended that the defendant be sentenced to nine years of imprisonment in IDOC. The State's recommendation was based on the defendant's criminal history outlined in the PSI, as well as the fact that the defendant failed to

appear in court. Defense counsel recommended that defendant be sentenced to a period of probation.

¶ 14    At the close of the defendant's sentencing hearing, the circuit court announced that it had "considered the Presentence Investigation Report, the evidence presented, the Statement in Allocution, the arguments of counsel, all statutory and nonstatutory Factors in Aggravation or Mitigation, *** and the history and character of the defendant." The circuit court then stated:

> "Having due regard to the seriousness of the offense and with the objective of restoring the defendant to useful citizenship, I find as follows. I find the following Factors in Aggravation: The defendant has a history of prior delinquency or criminal activity. *** And while it's not, necessarily, *** a specific Factor in Aggravation, *** I do acknowledge and take into consideration the defendant's failure to appear not only for the PSI but for the Sentencing Hearing today.
>
> I also find the following Factors in Mitigation: None."

After announcing its findings, the circuit court sentenced the defendant to an extended term of nine years and six months' imprisonment in IDOC and issued a warrant for the defendant's arrest. The defendant did not file a notice of appeal within 30 days of his sentence.

¶ 15    On June 2, 2023, the circuit court held a hearing because the defendant was extradited to Illinois from California. The circuit court confirmed the defendant's understanding that he had been sentenced *in absentia*. Also, the circuit court admonished the defendant of his right to appeal. After the defendant was admonished, defense counsel informed the circuit court that she had filed a written motion for a new sentencing hearing pursuant to section 115-4.1(e) of the Code (725 ILCS 5/115-4.1(e) (West 2022)) to determine if the defendant's absence was without his fault and beyond his control.

5

¶ 16    On July 13, 2023, the defendant filed a *pro se* petition to withdraw guilty plea and vacate sentence.[3] On August 25, 2023, the defendant filed a *pro se* notice of motions addressed to the State, defense counsel, and the circuit court. The defendant's notice of motions[4] relayed that the defendant would proceed *pro se*. Further, the "notice of motions" demanded the State, defense counsel, and the circuit court to send the defendant a copy of all documents filed after August 15, 2023. Additionally, on August 25, 2023, the defendant filed a *pro se* motion for posttrial discovery. On August 29, 2023, the defendant filed two additional *pro se* petitions to withdraw guilty plea and vacate sentence. One alleged the same grounds alleged in his July 13, 2023, petition. The second petition alleged, *inter alia*, that defense counsel advised the defendant that he could not withdraw his guilty plea until sentencing had occurred.[5] Attached to the second petition was a signed affidavit, which asserted in part: "immediately after January 27, 2023, within 30 days I demanded to [defense counsel] to withdraw my plea."

¶ 17    On September 22, 2023, a hearing on the defendant's motion to determine if the defendant's absence was without his fault and beyond his control took place. As a preliminary matter, the circuit court denied hearing the defendant's *pro se* petitions and motions filed July 13, 2023, August 25, 2023, and August 29, 2023, reasoning that it had lost jurisdiction over the defendant's case on April 21, 2023.

---

[3]The defendant's petition stated the following grounds, verbatim, in support: "(1) had no knowledge of extended term, (2) was not informed of all risk, (3) attorney never came to see him before court, and (4) requested to appeal to attorney many times."

[4]The attached notice of motions was created partially on notebook paper and partially on a standard notice of appeal form provided by the Illinois courts system.

[5]The second petition further alleged that defendant's assertion is "a subset of ineffective assistance of counsel" and cites to case law. However, the defendant did not raise the issue on appeal. As a result, the defendant has forfeited such argument. *People v. Johnson*, 2021 IL App (1st) 152310, ¶ 27.

¶ 18 Defense counsel then called the defendant to testify as to the basis for his failure to appear at his sentencing hearing on March 31, 2023. The defendant testified that he was unable to attend his sentencing hearing because

> "[t]hey had—they had changed the date on the—and you said I was informed I would be let known of the new court date. And I'm not sure if I got the new court date or not. Because I think it changed actually once for sure. Maybe twice. Right? And—and then, I was actually—had a job where I was—stayed at in California. And I actually had Corona and was staying in a homeless shelter for three weeks out there. And I had no phone or anything like that."

The defendant proceeded to tell the circuit court that his girlfriend had informed him that she had spoken to defense counsel. Moreover, the defendant testified that defense counsel received the necessary information to be informed about his circumstances while living in California.

¶ 19 In clarifying the above-mentioned testimony, the defendant testified that he caught the Coronavirus sometime around March 20, 2023. Around this time, the defendant testified that a homeless shelter purchased a motel room for the defendant. Further, the defendant testified that he was not allowed to leave the motel during that time.

¶ 20 On cross-examination by the State, the defendant confirmed that he had a federal conviction from 2005 for conspiracy to manufacture, distribute, and possess with the intent to distribute 500 grams or more of meth, a Class A felony. The defendant testified that he entered an open guilty plea for one count of unlawful possession of less than five grams of methamphetamine, a Class 2 felony, on or about January 27, 2023. At the time of the defendant's open guilty plea, the defendant testified that he remembered being informed by the circuit court that it could sentence him *in absentia.* Additionally, the defendant confirmed on cross-examination that he was told by

7

the circuit court to report to pretrial services. The defendant testified that he did not report to pretrial services because he "did not have a vehicle or a way there."

¶ 21    Upon the State asking the defendant where he was living at the time he was required to report to pretrial services, the defendant testified that he was "bouncing around. Because when [he] got out, [he] was supposed to go to [his] aunt's house. And [he] found out [his aunt] had passed. Right? And—no, [his aunt] had moved, and she did not have a place for [him] to stay." And so the defendant testified on cross-examination that he bought a one-way ticket to California. Additionally, the defendant testified that he could not recall being told not to leave the State of Illinois. Despite the aforementioned testimony, the defendant testified that he did not intend to live in California indefinitely.

¶ 22    As to the defendant's communications with defense counsel, the defendant testified on cross-examination that he did not communicate with defense counsel while living in California because his cellphone was locked in his car. Moreover, the defendant testified that he was not allowed access to his cell phone while in quarantine. The defendant testified that was the same reason he did not communicate with pretrial services.

¶ 23    Yet, the defendant testified on cross-examination that he was able to communicate with his girlfriend while living in California, and it was his understanding that his girlfriend and defense counsel spoke about his living circumstances. Furthermore, the defendant testified that it was his understanding that his girlfriend provided defense counsel with the necessary documentation regarding his living circumstances in California.

¶ 24    Based on the aforementioned testimony, the circuit court found that the defendant could not establish that his failure to appear in court was both without his fault and due to circumstances

beyond his control. The defendant timely appealed pursuant to section 115-4.1(g) of the Code (725 ILCS 5/115-4.1(g) (West 2022)).

¶ 25                                    II. ANALYSIS

¶ 26    Before we address the merits of the defendant's arguments, we first address the State's contentions of forfeiture. The State correctly mentions that this court would ordinarily lack jurisdiction over defendant's claim of sentencing error where the defendant did not object at sentencing, failed to raise the issue in a posttrial motion, and failed to file an appeal within 30 days. To preserve a claim of sentencing error, a defendant must make a contemporaneous objection and file a written postsentencing motion raising the issues. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). However, the State recognizes that defendant's claim is "presumably" made pursuant section 115-4.1(g) of the Code.[6] Section 115-4.1 provides a mechanism for those defendants tried and/or sentenced *in absentia* to request a review of their conviction and sentence beyond the 30 days.

¶ 27    Section 115-4.1(e) of the Code provides:

"When a defendant who in his absence has been \*\*\* both convicted and sentenced appears before the court, he must be granted a new trial or new sentencing hearing if the defendant can establish that his failure to appear in court was both without his fault and due to circumstances beyond his control. A hearing with notice to the State's Attorney on the defendant's request for a new trial or a new sentencing hearing must be held before any such request may be granted. At any such hearing both the defendant and the State may present evidence." 725 ILCS 5/115-4.1(e) (West 2022).

---

[6]The State notes the defendant's lack of reference to section 115-4.1(g) in his opening brief and argues this as a separate basis for forfeiture; however, it is clear from the record that defendant's appeal is made pursuant to this section of the Code as it is defendant's only viable avenue.

9

Further, section 115-4.1(g) provides:

> "A defendant whose motion under paragraph (e) for a new trial or new sentence hearing has been denied may file a notice of appeal therefrom. *Such notice may also include a request for review of the judgment and sentence not vacated by the trial court.*" (Emphasis added.) *Id.* § 115-4.1(g).

¶ 28 The State does not argue a lack of jurisdiction. Instead, the State argues that the defendant has forfeited his claim where he failed to present any argument in his opening brief regarding the circuit court's denial of his section 115-4.1(e) motion, and only asserted arguments challenging his sentence. The State maintains that this court should reject the defendant's attempt to extend the time period for filing his claims of sentencing error where his flight from the jurisdiction resulted in waiver of those claims.

¶ 29 Section 115-4.1(g) provides that a defendant whose motion for a new trial or new sentencing hearing under section 115-4.1(e) has been denied may file a notice of appeal and that "[s]uch notice may also include a request for review of the judgment and sentence not vacated by the trial court." *Id.* However, a defendant must request in his notice of appeal a review of the underlying judgment. Otherwise, "the notice of appeal would necessarily pertain only to issues relating to the order denying his section 115-4.1(e) motion ***, *i.e.*, whether his absence from court was without his fault and due to circumstances beyond his control." (Internal quotation marks omitted.) *People v. Pizarro*, 2020 IL App (1st) 170651, ¶ 21.

¶ 30 *Pizarro* is factually analogous to the circumstances in this case. In *Pizarro*, the defendant did not specifically mention his section 115-4.1(e) motion in his opening brief or make any argument that the circuit court improperly denied the motion. *Id.* ¶ 22. The *Pizarro* court found that the defendant's notice of appeal, although unsophisticated, was a timely notice of appeal from

10

the denial of his section 115-4.1(e) motion and indicated that he was appealing from the judgment. *Id.* ¶ 23. There, the circuit court determined that the defendant clearly intended to "request" review of the underlying judgment and sentence not vacated by the court. "[Defendant] has filed a notice of appeal seeking appellate review of the denial of his section 115-4.1(e) motion and the review of his conviction and sentence on certain counts, which is authorized under section 115-4.1(g)." *Id.* ¶ 26.

¶ 31　　Here, the defendant filed a notice of appeal on September 22, 2023. Such notice was timely pursuant to section 115-4.1(g). Additionally, the defendant's timely notice of appeal specifically lists his open guilty plea acceptance on January 27, 2023, his sentence *in absentia* on March 31, 2023, and the September 22, 2023, denial of his section 115-4.1(e) motion. Although the defendant did not raise any arguments regarding the denial of his section 115-4.1(e) motion in his opening brief, we find the reasoning in *Pizarro* instructive and find that the defendant's notice of appeal is sufficient to request a review of the underlying sentence. Thus, we reject the State's claim of forfeiture and turn to the merits of the defendant's argument.

¶ 32　　The defendant argues that the circuit court abused its discretion when it sentenced him to nine years and six months' imprisonment because (1) the court erroneously concluded no statutory mitigating factors applied, and (2) the sentence was disproportionate to the crime. In setting forth this argument, the defendant acknowledges that he did not preserve his sentencing challenge because he did not file a motion to reconsider. However, he argues that this court can consider his claim under the second prong of the plain-error doctrine, which applies when a clear or obvious error occurred, and that error was so egregious as to deny the defendant a fair sentencing hearing. *Hillier*, 237 Ill. 2d at 545. The defendant has the burden of persuasion under both prongs of the

11

plain-error doctrine. *Id.* The first step of plain-error review is determining whether any error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 33    It is well settled that the circuit court is afforded broad discretionary powers in imposing a sentence, and a circuit court's sentencing decision will not be disturbed upon review absent an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000); *People v. Steffens*, 131 Ill. App. 3d 141, 151 (1985). An abuse of discretion will be found only where the sentencing court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Hall*, 195 Ill. 2d 1, 20 (2000). The circuit court is granted such deference because it is generally in a better position than the reviewing court to determine the appropriate sentence, as it has the opportunity to weigh factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *Stacey*, 193 Ill. 2d at 209. Consequently, a reviewing court may not overturn a sentence merely because it might have weighed the pertinent factors differently. *People v. McGowan*, 2013 IL App (2d) 111083, ¶ 10.

¶ 34    The defendant contends that the circuit court failed to provide him with a fair sentencing hearing by erroneously finding there was no mitigating evidence. In support, the defendant argues the circuit court erred when it failed to consider his (1) voluntary guilty plea, (2) substance abuse disorder, (3) health condition, and (4) history of employment. The State argues that the factors raised by the defendant are nonstatutory, and it is within the discretion of the circuit court to determine which factors apply and what weight they should be given. Further, the State argues that it is presumed that the circuit court considered these factors where it had knowledge of the defendant's guilty plea and examined the presentence investigation report.

12

¶ 35    If mitigating evidence is presented at the sentencing hearing, a reviewing court presumes the circuit court considered that evidence absent some contrary evidence. *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 29. The circuit court is not required to recite or assign a value to each factor presented at the sentencing hearing. *Id.* The defendant bears the burden to affirmatively establish that the sentence was based on improper considerations, and we will not reverse a sentence imposed by a trial court unless it is clearly evident the sentence was improper.

¶ 36    Here, the circuit court expressly stated on the record that it had examined the PSI and had considered "all statutory and nonstatutory factors in aggravation or mitigation, whether specifically mentioned or not." In sentencing a defendant, the circuit court must consider a number of *statutory* mitigating factors. *People v. Lefler*, 2016 IL App (3d) 140293, ¶ 29. However, not all statutory mitigating factors listed in section 5-5-3.1 of the Unified Code of Corrections (730 ILCS 5/5-5-3.1 (West 2022)) may apply in every case. See *id.* ¶ 31 (noting that the trial court did not err in finding no statutory mitigating factors). Generally, the circuit court need not articulate each factor it considered in rendering a defendant's sentence. *People v. Villalobos*, 2020 IL App (1st) 171512, ¶ 74. Moreover, such a failure does not mean that the court did not consider all relevant factors. *Id.*

¶ 37    This court is aware of no authority—and the defendant has failed to cite any authority— that would suggest that a sentencing court is bound to apply nonstatutory mitigating factors such as those possibly implicated by the evidence presented at the defendant's sentencing hearing on March 31, 2023. See, *e.g.*, *Lefler*, 2016 IL App (3d) 140293, ¶ 31. Such authority would contradict the well-established notion that sentencing is the province of the circuit court. *Id.*; *e.g.*, *People v. Simms*, 60 Ill. App. 3d 519, 521 (1978). In addition, it is equally well established that the weight assigned to factors in aggravation and mitigation and the balance between those factors are matters

13

within the sentencing court's discretion. *Lefler*, 2016 IL App (3d) 140293, ¶ 31; *e.g.*, *People v. Latona*, 184 Ill. 2d 260, 272 (1998); *People v. Tatum*, 181 Ill. App. 3d 821, 826 (1989). A sentencing court somehow bound to *apply* a mitigating factor, *especially those that are nonstatutory*, then, would nevertheless have the discretion to give that factor *de minimis* effect. *E.g.*, *Lefler*, 2016 IL App (3d) 140293, ¶ 31. Further, the defendant fled the jurisdiction to California, where he had to be extradited back to Illinois. Defendant's failure to participate in any aspect of his sentencing, including the PSI interview, prevented his claims of employment, adverse health conditions, and substance abuse disorder from being verified or confirmed in any meaningful aspect. In this case, the defendant has failed to make a positive showing from the record to rebut the presumption afforded to the circuit court, where the court was aware of the defendant's guilty plea, examined the PSI, and stated it had considered all factors in mitigation and aggravation. The circuit court's determination that no mitigating factors applied under the circumstances was well within the circuit court's discretion where the defendant fled the jurisdiction and failed to participate in the PSI interview.

¶ 38    Next, the defendant argues that the offense committed was not serious and his sentence is manifestly disproportionate to the crime, possessing a small amount of methamphetamine. However, the defendant acknowledges that his extended sentence is within the statutory range. The defendant cites to *People v. Stacey*, 193 Ill. 2d 203 (2000), in support of his argument that his sentence was manifestly disproportionate to the offense. In *Stacey*, the defendant was sentenced to 25 years of imprisonment, for aggravated sexual abuse and criminal sexual conduct, and the sentence was within statutory limits. *Id.* In these separate offenses, the defendant momentarily grabbed the breasts of two young girls, who were fully clothed at the time, in addition to making lewd comments and gestures. *Id.* at 210. The Illinois Supreme Court found that the imposed

14

sentence was manifestly disproportionate because the crimes were not severe enough given their nature. *Id.* at 211. However, we are not persuaded by defendant's argument here and find *Stacey* to be inapposite and factually distinguishable where it involved crimes sexual in nature and a completely different set of sentencing ranges.

¶ 39 Illinois courts recognize that sentences are presumed to be proper. *People v. Boclair*, 225 Ill. App. 3d 331, 335 (1992). When a sentence imposed falls within the statutorily prescribed range, it will not be found to be excessive or an abuse of discretion unless the sentence greatly varies from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Weiser*, 2013 IL App (5th) 120055, ¶ 33. In other words, an abuse of discretion may be found, even if the sentence is within the statutory range, if it is contrary to the purpose and spirit of the law. *Id.*

¶ 40 Here, the defendant pled guilty to one count of unlawful possession of methamphetamine, a Class 3 felony, which carries a possible extended-term sentencing range of 2 to 10 years, in exchange for the dismissal of his Class 2 felony count possession of a stolen motor vehicle. The defendant then fled the jurisdiction to California and had to be extradited back to Illinois. As reflected in the background section of this appeal, the record reveals that the defendant knew there was a possibility that he would be sentenced to an extended term. The defendant's extended-term eligibility is a result from his extensive criminal history spanning over 32 years. The defendant has multiple felony convictions and convictions from multiple states, including a sentence of 168 months in federal prison involving methamphetamine. The circuit court noted the defendant's lengthy criminal history and considered the defendant's failure to appear for his PSI interview and sentencing hearing. Though the circuit court sentenced the defendant to nine years and six months' imprisonment, which was six months more than the State requested, we note that it was not the

15

maximum and is served at 50%. Moreover, the record indicates that the circuit court properly considered the nature and circumstances of the offense, as well as the defendant's mitigating and aggravating factors. Based on the foregoing, we cannot say the circuit court abused its discretion in sentencing the defendant, and his sentence is not manifestly disproportionate.

¶ 41                                    III. CONCLUSION

¶ 42     Based on the foregoing, we find that no error occurred during the defendant's sentencing where the circuit court did not abuse its discretion, and the defendant's sentence is not manifestly disproportionate under the circumstances. Thus, the defendant fails to establish plain error, and his sentence is affirmed.

¶ 43     Affirmed.