2022 IL App (2d) 180589
No. 2-18-0589
Opinion filed March 29, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 12-CF-136 |
| | ) | |
| JAMIE T. KIMMONS, | ) | Honorable |
| | ) | James C. Hallock, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justice Brennan concurred in the judgment and opinion.
Justice Hutchinson dissented, with opinion.

**OPINION**

¶ 1 Defendant, Jamie T. Kimmons, appeals from the first-stage dismissal of his *pro se* postconviction petition. On appeal, defendant argues (1) that the trial court erred in dismissing defendant's petition as being untimely under section 122-1(c) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(c) (West 2018)) and (2) that defendant's petition presented the gist of a constitutional claim that defendant's plea counsel rendered ineffective assistance for failing to file a motion challenging the warrant to search defendant's residence. For the following reasons, we hold that, when defendant pled guilty, he waived his claim that plea counsel was ineffective. We therefore affirm.

¶ 2                                    I. BACKGROUND

¶ 3    On January 18, 2012, Investigator Steven Stemmet appeared before a Kane County judge along with a confidential informant, John Doe, to apply for a search warrant authorizing police to search defendant's residence for firearms. The search warrant itself does not appear in the record; however, file-stamped copies of the affidavits of Stemmet and the confidential informant supporting the application for the search warrant are attached as exhibits to defendant's petition. Both affidavits are signed by the issuing judge. The search warrant was approved and executed that same day.

¶ 4    The record reveals that the items seized from defendant's residence included 808 grams of a substance containing cocaine, four handguns, approximately $9000 in cash, and materials commonly used to repackage and sell cocaine. Defendant was not present when the warrant was first executed, but he arrived while the police were still searching his residence. Defendant made oral statements admitting that the cocaine was his, that he intended to sell it, and that some of the money found in the home was the proceeds of drug sales.

¶ 5    Defendant was arrested and charged in six counts with (1) possession of a controlled substance (cocaine) with intent to deliver (400 grams or more but less than 900 grams, in violation of section 401(a)(2)(C) of the Illinois Controlled Substances Act (720 ILCS 570/401(a)(2)(C) (West 2012)); (2) possession of a controlled substance (cocaine) more than 400 but less than 900 grams (*id.* § 402); (3) unlawful use of a weapon by a felon (UUW) (720 ILCS 5/24-1.1(a) (West 2012)) (Colt Model 1911 .45-caliber semiautomatic pistol); (4) UUW by a felon (*id.*) (Llama Max-1 .45-caliber semiautomatic pistol); (5) UUW by a felon (*id.*) (Hi-Point Model JHP .45-caliber semiautomatic pistol); and (6) UUW by a felon (*id.*) (Lorcin Model I .380-caliber semiautomatic pistol).

¶ 6    On January 26, 2012, defendant first appeared in court. The trial court advised defendant of the possible penalties he was facing. On count I, defendant faced a sentence of "12 to 40 years in the Department of Corrections." Defendant requested the appointment of a public defender. While discussing defendant's financial resources to retain private counsel, defendant told the trial court that he would "like to speak to—I'm trying to work with the State, if I could talk to them." The trial court commented, "Well, I don't know." The court appointed the public defender.

¶ 7    On February 17, 2012, defense counsel requested a conference pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 1997). The trial court admonished defendant that, during the Rule 402 conference, the court would learn "facts and details that it otherwise would not learn." Defendant told the court that he understood and wanted the court to participate in the conference. The transcript from February 17, 2012, does not reflect what transpired during the conference. The common law record contains an agreed order reducing defendant's bail from $300,000 to $20,000. The bond was promptly posted by Carolina Muro, who, according to Stemmet's affidavit, lived with defendant. The case was continued to June 1, 2012.

¶ 8    On March 19, 2012, the State filed a motion to revoke or to increase bail. In the motion, the State alleged that, on "February 17, 2012, the defendant entered into an agreement with the Kane County State's Attorney's Office" and that "defendant violated the terms and conditions of bond."

¶ 9    On March 21, 2012, the trial court heard argument on the State's motion. Defense counsel reported that she had not had "any contact or communication" with defendant but agreed to allow the State to proceed by way of proffer as to facts Stemmet would provide if called as a witness. Defendant had agreed to maintain contact with Stemmet as a condition of his bond. After posting

bond on February 17, 2012, defendant did maintain contact over the next weekend, through February 18 or 19, 2012. After that, Stemmet did not hear from defendant, and when Stemmet tried calling "the number [of defendant], the phone was off." Defense counsel had no response. The trial court issued an arrest warrant and scheduled a date for entry of judgment on the bond forfeiture. On May 11, 2012, the trial court entered judgment on the bond forfeiture.

¶ 10    On February 11, 2013, while defendant was still wanted on the warrant, a grand jury returned a six count indictment on the original charges in the complaint. Defendant did not appear in court on June 1, 2012.

¶ 11    On June 30, 2014, defendant was arrested. On July 2, 2014, the trial court reappointed the same public defender who had previously represented defendant. On July 16, 2014, defense counsel requested an agreed date "to determine where [the parties were] at on discovery." On August 29, 2014, the State furnished 116 pages of discovery materials along with a disc marked "SAO Disc 1." Defense counsel requested a date to review the discovery materials. In its answer to discovery, the State said that "[t]here is no informant that the People intend to call as a witness in the trial of this cause." The State also said that it was "unaware of any evidence or witnesses which may be favorable to the defense in this cause." The trial court reminded defendant to keep in touch with defense counsel and to follow her "instructions and legal advice."

¶ 12    On October 10, 2014, the State tendered additional discovery materials. Defense counsel stated that she needed at least one more date before setting the case for trial and that "[the parties] were in negotiations at [that] time." On November 14, 2014, defendant was arraigned on the indictment. Defendant was told that, on count I, he faced a sentence of 12 to 50 years in prison. Count II carried a sentence of 8 to 40 years. Defense counsel entered a not guilty plea on

defendant's behalf and told the trial court that defendant was not demanding a trial date because "[they] were in negotiations with the State." The case was continued for "plea or setting."

¶ 13    On January 8, 2015, defense counsel informed the trial court that "there has been some developments. The State has chosen to file an additional felony matter against [defendant] that will be pending before this court." The assistant state's attorney (ASA) informed the court that the new felony was filed under case No. 14-CF-2194.

¶ 14    On February 26, 2015, defense counsel requested a date for arraignment on case No. 14-CF-2194 and stated that, "in the interim," she hoped to "proceed with *discovery* negotiations." (Emphasis added.) The case was continued by argument.

¶ 15    On April 10, 2015, when the case was called, the ASA told the court that she thought "[the parties] may have a plea." The case was passed so defendant could confer with defense counsel. When the case was recalled, the ASA stated that, pursuant to the proposed plea agreement, case No. 14-CF-2194 would be dismissed. The trial court then advised defendant that, in case No. 14-CF-2194, he was charged by way of indictment with bail bond violation, a Class 1 felony carrying a penalty of 4 to 15 years in the Department of Corrections, or 15 to 30 years if he was eligible for extended term sentencing.[1] The ASA informed the court that "these [were] extended terms."

¶ 16    The trial court readmonished defendant on the range of penalties on the six count indictment. The trial court fully admonished defendant pursuant to Illinois Supreme Court Rule

---

[1] Defendant's brief makes no mention of case No. 14-CF-2194. We caution counsel that a statement of facts must contain the "facts necessary to an understanding of the case." Ill. S. Ct. R. 315 (eff. Oct. 1, 2020).

605 (eff. Oct. 1, 2001). Defendant assured the court that his guilty plea was "free and voluntary" and that no one had forced, coerced, or promised him anything for his plea. Defendant stated that he had met with his attorney and understood what she was talking about.

¶ 17    The ASA outlined the terms of the plea argument. Defendant would plead guilty to possession with intent to deliver more than 400 grams but less than 900 grams of cocaine. All other counts in case No. 12-CF-136 would be dismissed, and the indictment for case No. 14-CF-2194 "[would] be dismissed as part of [the] plea agreement." Defendant agreed to be sentenced to 14 years in the Department of Corrections under truth in sentencing at 75% with 321 days credit against his sentence. There was an agreed upon street value fine based on the quantity of cocaine, along with additional fees and costs.

¶ 18    The ASA provided a factual basis for the plea. The ASA stated that, on January 18, 2012, Aurora police officers "executed a search warrant on the defendant's residence." Along with other items, the police recovered an amount of a substance that "tested positive for cocaine," weighing "436 grams," that was confirmed as cocaine by the Illinois State Police Crime Lab. The police also recovered scales and drug mixing substances, drug packaging equipment, and a large amount of cash. While the police were executing the warrant, defendant arrived on the scene. He was read his rights. Defendant admitted that the cocaine recovered was his and that he intended to sell it. He also admitted that "a portion" of the money found was from "drug sales." Defense counsel stipulated to the facts for purposes of the plea. Counsel advised the trial court that defendant's criminal history included a "Class X unlawful delivery" conviction in 2002 and a Class 3 aggravated battery conviction in 1995.

¶ 19    The trial court accepted the plea agreement and found that it was free and voluntary. Defendant acknowledged that he understood that his sentence was "for 14 years in the [D]epartment of [C]orrections to be served at 75 percent," followed by "a three-year mandatory supervised release." The trial court dismissed the indictment in case No. 14-CF-2194 and advised defendant regarding his right to appeal and the requirement to file a motion "within 30 days of today's date[,] asking to have the judgment vacated and for leave to withdraw [his] plea of guilty[,] and [that he] must set forth the reasons for [his] request in that motion." The trial court advised defendant that, if his motion to withdraw was allowed, he would be placed in the same situation as before his plea, namely, that all of the dismissed charges would be reinstated. The trial court stressed that "it [was] important to remember that any claim of error that [defendant] fail[ed] to raise in [his] motion [will be] deemed to be waived for purposes of appeal." Defendant stated that he understood. Defendant did not file a motion to withdraw his guilty plea.

¶ 20    On April 10, 2018, defendant placed his *pro se* postconviction petition in the prison mail, and on April 27, 2018, it was officially filed with the court. Defendant's petition had three arguments and raised a number of claims.

¶ 21    Defendant argues first that plea counsel was ineffective for failing to adequately advise defendant to plead guilty.

¶ 22    Defendant argued next that trial counsel was ineffective for failing to file a motion to suppress evidence, rendering his guilty plea involuntary or unreasonable. Defendant argued that, because damaging information about the confidential informant was omitted from the affidavits for the search warrant, the issuing judge was deprived of "highly relevant information that tends to undermine Doe's credibility and thus the probable cause determination." Defendant argued that

"[a] defendant is entitled to a *Franks* hearing [(see *Franks v. Delaware*, 438 U.S. 154 (1978))]—an evidentiary hearing regarding the veracity of information included in a search warrant application if he can make a substantial preliminary showing that: (1) the warrant [a]ffadavit contained false statements, (2) these false statements were made unintentionally or with reckless disregard for the truth, and (3) the false statements were material to the finding of probable cause."

Defendant's only allegation regarding any "false statements" is the omitted information regarding Doe's background.

¶ 23    In defendant's third argument, he claimed that the State violated discovery rules by withholding exculpatory material about the informant's criminal history, thus rendering defendant's guilty plea involuntary and unknowing. Defendant stated that he discovered Doe's identity and that Doe was a career criminal currently serving a sentence in the Department of Corrections.[2]

¶ 24    On June 4, 2018, the trial court dismissed defendant's postconviction petition, alternatively finding that (1) it was untimely under section 122-1(c) of the Act (725 ILCS 5/122-1(c) (West 2018)); (2) "petitioner has not supported his petition with an affidavit"; and, (3) even if defendant "had the right to file this petition," it failed on the merits.

¶ 25    On July 20, 2018, defendant moved to file a late notice of appeal, explaining that he was held at a different facility than the one to which the court's dismissal order was directed. We granted the motion on August 1, 2018.

---

[2] In his petition, defendant names the person he believes to be Doe.

¶ 26                                    II. ANALYSIS

¶ 27    Defendant argues that (1) the trial court erred in dismissing his petition because it was untimely; (2) the "affidavit by Investigator Stemmet satisfied the Act's requirements"; (3) defendant "was only required to show the existence of an arguable basis for his claims, not make a substantial showing of a constitutional violation"; and (4) plea counsel's failure to challenge the search warrant, "despite the fact it lacked probable cause and was based on the withholding of critical information about the reliability of the informant," stated the gist of a constitutional claim that plea counsel was ineffective. Defendant argues that plea counsel could have challenged the warrant "either in a motion to quash and suppress or in a motion for a *Franks* hearing" and that, if the evidence had been suppressed, "there would have been no evidence to support the charges."

¶ 28    The State argues that (1) defendant waived his claims by entering a guilty plea and failing to file a motion to withdraw his guilty plea; (2) defendant did not attach sufficient affidavits, records, or other evidence to support his allegations; (3) no *Brady* violation occurred, since the State was not obligated to disclose the confidential informant's identity; and (4) defendant's petition failed to state the gist of a claim of ineffective assistance of counsel.

¶ 29    Despite defendant's multiple arguments, this appeal is resolved on the narrow grounds of waiver, which obviates the need to address defendant's various substantive issues.

¶ 30                    A. Principles Governing Postconviction Petitions

¶ 31    The Act (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a remedy to a criminal defendant whose constitutional rights were substantially violated at trial or sentencing. *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 19. As such, it is not a direct appeal from the underlying judgment

but a collateral attack on it. *Id.* The defendant is constrained to raising constitutional issues that were not and could not have been raised on direct appeal. *Id.*

¶ 32 The Act contemplates a three-stage process for adjudicating a postconviction petition. *People v. Hommerson*, 2014 IL 115638, ¶ 7. In the first stage, the trial court is to determine whether the petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018). The court independently assesses whether the petition's allegations, liberally construed and taken as true, set forth the gist of a constitutional claim. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). If the petition is advanced to the second stage, the State may answer the petition or move to dismiss it. *People v. Dupree*, 2018 IL 122307, ¶ 28. If the State moves to dismiss the petition, the trial court must decide whether to grant the motion or to advance the petition to the third stage. *Id.* A defendant is entitled to an evidentiary hearing only if the allegations of the petition along with the affidavits, record, and evidence make a substantial showing of a deprivation of constitutional rights. *Id.*

¶ 33 Focusing on the first-stage assessment, the "gist" standard is a low threshold. *People v. Allen*, 2015 IL 113135, ¶ 24. In the first stage, the court considers the substantive virtue of the petition rather than its procedural compliance. *Id.* However, the fact that the "gist" standard is a low threshold does not excuse a *pro se* defendant from providing factual support for his or her claims; rather, the defendant is required to provide a sufficient factual basis to show that the petition's allegations are capable of independent or objective corroboration. *Id.* We review *de novo* the first-stage dismissal of a postconviction petition. *People v. Boykins*, 2017 IL 121365, ¶ 9. Claims of ineffective assistance of plea counsel are governed by the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Brown*, 2017 IL 121681, ¶ 25. In order

to move beyond first-stage review, defendant must show that it is arguable that counsel's advice was deficient and that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Under the facts of the case, defendant must show that it is arguable that counsel's advice was deficient and it is arguable that a motion to suppress would have been successful. We may affirm on any basis supported by the record. *People v. Cleveland*, 342 Ill. App. 3d 912, 915 (2003).

¶ 34                                                 B. Timeliness

¶ 35     The trial court's first-alternative basis for dismissal, on timeliness grounds, was erroneous. Aside from the fact that the trial court miscounted the limitations period, the trial court expressly determined that defendant's postconviction petition was untimely and dismissed it on that basis. It is settled beyond any possible argument that, at the first stage of review of a postconviction petition, untimeliness may not be a basis for dismissal. *Allen*, 2015 IL 113135, ¶ 25; *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). It is our hope that this mistake will not be repeated.

¶ 36                                                  C. Waiver

¶ 37     We turn to the issue of waiver. Relying on *People v. Vilces*, 321 Ill. App. 3d 937, 941 (2001), the State argues that, by pleading guilty and failing to file a motion to withdraw his guilty plea, defendant has waived consideration of his claim regarding the sufficiency of the warrant. Defendant responds to the State's waiver argument, contending that the guilty plea waiver rule is relaxed where "it is argued that the evidentiary basis for [a] claim of ineffectiveness is outside the record *** or if the facts relating to the competency of counsel are newly discovered." *People v. Daniels*, 301 Ill. App. 3d 87, 97 (1998). Defendant argues that the record lacks any indication that he saw the affidavits on which he bases his claim any time before he entered into the plea

agreement and that there is no indication that defendant knew he had a viable suppression issue. We agree with the State that the issues raised by defendant were waived by his voluntary guilty plea.

¶ 38     "It has long been established in Illinois caselaw that a voluntary guilty plea waives all nonjurisdictional errors, including constitutional defects." *People v. Johnson*, 2021 IL App (1st) 152310, ¶ 21; *People v. Townsell*, 209 Ill. 2d 543, 545 (2004); *People v. Jones*, 2021 IL 126432, ¶ 20. There are exceptions to the guilty plea waiver rule as applied to postconviction claims. The rule does not apply to claims of actual innocence. *People v. Reed*, 2020 IL 124940, ¶¶ 41-42. The rule does not apply where a defendant claims his or her plea was involuntary because plea counsel provided deficient advice. See *Townsell*, 209 Ill. 2d at 545; *People v. Smith*, 383 Ill. App. 3d 1078, 1085 (2008). The rule may be relaxed where the interests of " 'fundamental fairness' necessitate[ ] *** review." *People v. Miranda*, 329 Ill. App. 3d 837, 843 (2002). The waiver rule does not apply where "the plea itself was involuntary because of faulty admonishments." *People v. Stroud*, 208 Ill. 2d 398, 403 (2004).

¶ 39     Defendant acknowledges the guilty plea waiver rule but argues that the deficient advice exception applies. We note that defendant does not allege in his postconviction petition, or argue on appeal, that, before his plea, he wished to challenge the search warrant or that his plea counsel induced his plea by providing erroneous legal advice, for example, that the search warrant could not be challenged or that a *Franks* motion could not succeed. The record shows that, from the time of his arrest, defendant was aware of the search warrant and, in discovery, the State declined to provide the identity of the confidential informant. The Supreme Court of the United States

"has found that the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *United States v. Ruiz*, 536 U.S. 622, 630 (2002) (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)).

Requiring pre-plea disclosures of impeachment material "could seriously interfere with the Government's interest in securing those guilty pleas that are factually justified, desired by defendants, and help to secure the efficient administration of justice." *Id.* at 631. Premature disclosures could also disrupt ongoing investigations as well as expose witnesses to serious harm by revealing the identity of cooperating informants. *Id.* at 632. Based on those considerations, the Supreme Court held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Id.* at 633; see *People v. Gray*, 2016 IL App (2d) 140002. By the time defendant entered his guilty plea, he not only faced up to 50 years in this case but also up to 30 consecutive years on the bond jumping indictment that the State agreed to dismiss in exchange for defendant's guilty plea. The fact that defendant later learned the identity of the confidential informant does not excuse his waiver, wherein he repeatedly assured the trial court that his plea was knowing and voluntary.

¶ 40    While we uphold defendant's waiver, we briefly note that, even if we were to find that the waiver rule should be relaxed in this case, defendant does not make an arguable claim that plea counsel's decision not to challenge the warrant was deficient. *People v. Hall*, 217 Ill. 2d 324, 335 (2005). Defendant does not claim that Stemmet made statements that were false or that he made

statements with reckless disregard for the truth. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Defendant argues that "[p]lea counsel could have argued the affidavit contained material omissions for the purpose of misleading the magistrate so as to make a substantial preliminary showing required for a *Franks* hearing." Defendant cites *Mapp v. Ohio*, 367 U.S. 643 (1961), for the proposition that, if the warrant had been "quashed," the evidence would have been suppressed and there would be no evidence to support the charges.

¶ 41 The decision whether to file a motion to suppress is generally " 'a matter of trial strategy, which is entitled to great deference.' " *People v. Bew*, 228 Ill. 2d 122, 128 (2008) (quoting *People v. White*, 221 Ill. 2d 1, 21 (2006)). A variety of trial strategy claims of ineffective assistance regarding counsel's advice must be judged on a "circumstance-specific basis, viewed not in hindsight, but from the time of counsel's conduct, and with great deference accorded [to] counsel's decisions on review." *People v. Fuller*, 205 Ill. 2d 308, 330-31 (2002).

¶ 42 The record in this case shows that the confidential informant appeared before the issuing judge. In *People v. Moser*, this court held that, "[w]here the informant has appeared before the issuing judge, the informant is under oath, and the judge has had the opportunity to *** assess the informant's credibility, additional evidence relating to informant reliability is not necessary." *People v. Moser*, 356 Ill. App. 3d 900, 909 (2005) (citing *People v. Hancock*, 301 Ill. App. 3d 786, 792 (1998), and *People v. Phillips*, 265 Ill. App. 3d 438, 448 (1994)). *People v. Gorosteata*, 374 Ill. App. 3d 203, 215 (2007), from the First District, followed the rule in *Phillips* and held that the defendant was not entitled to a *Franks* hearing. In *People v. Caro*, 381 Ill. App. 3d 1056, 1065 (2008), another division of the First District disagreed with *Gorosteata*'s holding that, where the informant appears before the issuing judge, "th[e] case falls outside the scope of *Franks*." In

*People v. Chambers*, 2016 IL 117911, ¶ 63, our supreme court resolved the split within the First District and between the First and Second Districts. The court stated that it rejected "the bright-line rule of *Gorosteata* and [held] that the presence of the informant at the *ex parte* hearing on the warrant application does not, standing alone, foreclose the possibility of a *Franks* hearing." *Id.* The court overruled *Gorosteata* and found that "all cases applying the rule enunciated therein [were] hereby overruled." *Id.*

¶ 43    At the time of defendant's plea, this court followed the rule in *Moser*, *Phillips*, and *Gorosteata*. There were no conflicting decisions within this district. Our supreme court explained that, under this line of cases, any failure to elicit information from the informant that would test his or her credibility "lies with the issuing magistrate and not with the law enforcement officers." (Internal quotation marks omitted.) *Id.* ¶ 48. As such, even if plea counsel had filed a motion to suppress and/or a motion for a *Franks* hearing, the trial court would be required to follow *Moser* and deny the motions. Under the rule of *stare decisis*, the circuit court must follow decisions of the appellate court of the district in which it sits. *Aleckson v. Village of Round Lake Park*, 176 Ill. 2d 82, 92 (1997) ("when conflicts arise amongst the districts, the circuit court is bound by the decisions of the appellate court of the district in which it sits"). Given the status of the law at the time of defendant's plea, it is not arguable that a challenge to the search warrant would have or could have been successful.

¶ 44                                        III. CONCLUSION

¶ 45    For all the foregoing reasons, we affirm the trial court's order summarily dismissing defendant's *pro se* postconviction petition.

¶ 46    Affirmed.

¶ 47    JUSTICE HUTCHINSON, dissenting:

¶ 48    I respectfully dissent. As the majority acknowledges, the trial court dismissed defendant's *pro se* postconviction petition on the basis that it was untimely (*supra* ¶ 35), which flatly contravenes our supreme court's decision in *People v. Boclair*, 202 Ill. 2d 89 (2002). While I might largely agree with the majority's subsequent analysis of the merits of defendant's petition, that simply is not our advice to give. That analysis ought to be performed by the trial court during second-stage proceedings. Reasonable minds can differ on the issue of how principles of judicial economy should function in cases such as this one. What reasonable minds cannot dispute, however, is that *Boclair* says what it says. Accordingly, I dissent.

---

**No. 2-18-0589**

---

| | |
|---|---|
| **Cite as:** | *People v. Kimmons*, 2022 IL App (2d) 180589 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 12-CF-136; the Hon. James C. Hallock, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Anthony J. Santella, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Joseph H. McMahon, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and David S. Friedland, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---