NOTICE
Decision filed 07/25/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220010-U

NO. 5-22-0010

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 84-CF-360 |
| | ) | |
| RODNEY BALTIMORE, | ) | Honorable |
| | ) | Thomas E. Griffith Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Cates and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*: We reverse and remand for the appointment of new postconviction counsel and further second-stage postconviction proceedings because the defendant has stated the gist of a constitutional claim that his natural life sentence, imposed without proper considerations of his youth for offenses committed when he was 18 years old, violated the proportionate penalties clause as applied to him.

¶ 2    The defendant, Rodney Baltimore, appeals from the summary dismissal of his postconviction petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). For the following reasons, we reverse and remand for second-stage proceedings.

1

¶ 3                                   I. BACKGROUND

¶ 4     On September 25, 1984, the defendant, who was 18 years old, entered an open guilty plea to two counts of first degree murder for the deaths of Prentice Curfman (as the principal) and Effie Curfman (under a theory of accountability). There was no sentencing agreement between the parties, but the parties agreed that the defendant could only be convicted of two counts of murder, so the remaining murder counts would be dismissed. The trial court informed the defendant that the sentencing range for first degree murder was 20 to 40 years in prison, a natural life sentence, or the death penalty.[1]

¶ 5     The plea's factual basis established that, on July 14, 1984, a neighbor discovered the Curfmans in their home; Effie was found dead in the living room wrapped up in a bedspread, and Prentice was found severely injured but alive in a bedroom. Effie died from multiple traumatic injuries of the head and chest area. Prentice ultimately died from complications resulting from multiple injuries to his head and chest. After the defendant's fingerprints were discovered in the residence, the defendant was interviewed about the murders. During the interview, he admitted that he and Gary Clark entered the Curfmans' residence to steal money from them. The defendant admitted striking Prentice numerous times but denied striking Effie. He indicated that Clark struck Effie. Clark also made a statement to the police admitting physical contact with Effie but denying any physical contact with Prentice.

¶ 6     After admonishing the defendant, the trial court found that the defendant understood the nature of the charges against him and the possible penalties, made the plea freely and voluntarily,

---

[1]Although it does not appear that the parties or the trial court realized it, in 1984, a natural life sentence was the mandatory minimum term for a person convicted of two murders. See Ill. Rev. Stat. 1983, ch. 38, ¶ 1005-8-1(c). Thus, the trial court was obligated to impose a natural life term (or the death penalty) regardless of the defendant's youth.

2

and that a factual basis existed for the plea. The court then accepted the defendant's plea and entered a judgment of guilty.

¶ 7 On October 9, 1984, the trial court sentenced the defendant to natural life imprisonment. In finding that the death penalty was not an appropriate sentence, the court considered the defendant's guilty plea, noting that a guilty plea demonstrated a recognition of the wrong and was the first step to rehabilitation. The court then stated, "Although the plea was unconditional and unconditionally entered, it has some recognition value in the total picture of society's entry and protection." The court noted that the defendant "throwing himself on the mercy of the court, thus eliminating the time and the great expenses of a jury trial," should get some recognition. The court also noted that the codefendant, Clark, was not eligible for the death penalty because he was a juvenile offender.

¶ 8 On April 12, 2016, the State filed a motion to schedule a new sentencing hearing for the defendant based on *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 577 U.S. 190 (2016), because the defendant was a young adult at the time he was sentenced. At a July 15, 2016, status hearing, the trial court noted that the defendant was not in the same situation as Clark; the defendant had turned 18 years old a few weeks before committing the offenses while Clark was under 18 years old at that time. The court then determined that there was "nothing to do" in the defendant's case. The defendant then attempted to appeal that decision, but this court dismissed that appeal for lack of a final, appealable order. Clark was ultimately resentenced to 35 years and was released from prison on July 19, 2019.

¶ 9 On September 21, 2021, the defendant filed a *pro se* petition for postconviction relief, arguing that his natural life sentence violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) in light of *Miller* and its progeny because he was 18

3

years old at the time of the offenses. He noted that Illinois courts in other cases had advanced similar successive postconviction claims for emerging adults under the age of 21. In support of his petition, he attached a report from developmental psychologist, Dr. James Garbarino, explaining why it was scientifically justifiable to extend the protections offered under *Miller* to emerging adults ages 18 to 25. Also attached was the defendant's affidavit in which he indicated that his trial court record contained no evidence concerning the evolving science of offenders like himself who were under 21 years old at the time of committing the offense, or its impact on his case.

¶ 10    On December 17, 2021, the trial court entered an order dismissing the defendant's *pro se* postconviction petition at the first stage of the postconviction proceedings. In the order, the court noted that, other than Dr. Garbarino's report, the defendant's claims were not supported by affidavits, records, or other evidence as required by section 122-2 of the Act (725 ILCS 5/122-2 (West 2020)). The court found that the defendant's claims were mere conclusions that had no basis in fact. The court then noted that the defendant cited no cases or other authority to support his position that a natural life sentence for two brutal first degree murders for a defendant who was 18 years old violated the proportionate penalties clause. Also, the court noted that the new parole statute was very clear that it only applied to sentences imposed after June 1, 2019, and was specifically not made retroactive prior to that date.

¶ 11    The trial court then indicated that the defendant had essentially requested the court to "bootstrap the principles set forth in *Miller*," and its progeny, even though he was not under 18 years of age at the time of the offenses. The court again noted that the defendant had not cited any authority to make this legal analogy and had not set forth any facts regarding his conduct in the two murders to support his claim. Thus, the court found that the defendant had failed to state the

4

gist of a constitutional claim and dismissed the petition as frivolous and patently without merit. The defendant appeals.

¶ 12                                    II. ANALYSIS

¶ 13    The Act (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a collateral means for a defendant to challenge a conviction or sentence for a violation of a constitutional right. *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 19. The Act establishes a three-stage process for adjudicating a postconviction petition. *Id.* ¶ 20. At the first stage of the postconviction proceedings, the trial court must determine, without any input from the State, whether defendant's petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2020); *People v. Tate*, 2012 IL 112214, ¶ 9. A petition is frivolous or patently without merit if it has no arguable basis either in law or in fact. *Tate*, 2012 IL 112214, ¶ 9. If the court determines that the petition is frivolous or patently without merit, the court must dismiss the petition. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009).

¶ 14    To survive a dismissal at this initial stage, the trial court must assess whether the petition's allegations, liberally construed and taken as true, set forth the gist of a constitutional claim. *People v. Kimmons*, 2022 IL App (2d) 180589, ¶ 32. The threshold for surviving first-stage proceedings is low because defendants with limited legal knowledge or training draft most postconviction petitions. *Hodges*, 234 Ill. 2d at 9. Thus, a postconviction defendant is only required to allege enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act. *Id.* We review *de novo* the summary dismissal of a postconviction petition. *People v. Harris*, 224 Ill. 2d 115, 123 (2007).

¶ 15    The defendant argues that the trial court erred when it dismissed his *pro se* postconviction petition at the first stage of the proceedings because his petition raised an arguable claim that his natural life sentence, imposed without proper considerations of his youth, violated the

5

proportionate penalties clause. In response, the State contends that we need not reach this constitutional issue because the defendant's guilty plea bars his sentencing claims under *Miller*.

¶ 16    In 2005, the United States Supreme Court recognized that juvenile offenders were constitutionally different from adult offenders regarding sentencing. *People v. Lusby*, 2020 IL 124046, ¶ 32. Specifically, in *Roper v. Simmons*, 543 U.S. 551, 578-79 (2005), the Court held that the eighth amendment barred the imposition of the death penalty for juvenile offenders. Also, in *Graham v. Florida*, 560 U.S. 48, 82 (2010), the Court held that the eighth amendment prohibited a juvenile nonhomicide offender from being sentenced to life imprisonment without parole. Subsequently, in *Miller*, the Court held that the eighth amendment also prohibited mandatory life sentences without parole for juvenile offenders because the sentencing court was prevented from considering defendant's youth and attendant circumstances. *Miller*, 567 U.S. at 479. However, the Court recognized that such a sentence could be imposed where the sentence was not mandatory, and the sentencing court had the discretion to consider the mitigating qualities of a youthful offender and to impose a lesser punishment. *Id.* at 476, 489. The Court later held that *Miller* applied retroactively. *Montgomery*, 577 U.S. at 206.

¶ 17    Given the above line of cases, the Illinois Supreme Court has developed its own evolving jurisprudence regarding sentencing claims raised by juveniles and young adults. *People v. Aceituno*, 2022 IL App (1st) 172116, ¶ 18. In *People v. Reyes*, 2016 IL 119271, ¶ 9, the supreme court expanded *Miller*'s application to include *de facto* life sentences. Our supreme court then held that any sentence imposed on a juvenile that exceeded 40 years constituted a *de facto* life sentence for the purpose of a *Miller* challenge. *People v. Buffer*, 2019 IL 122327, ¶ 41.

¶ 18    In addition, the supreme court has considered whether the *Miller* line of cases also applies to young adult defendants. In *People v. Harris*, 2018 IL 121932, ¶ 61, the court held that, for

6

purposes of the eighth amendment, the age of 18 marked the line separating juveniles from adults. However, the court did not completely foreclose an as-applied *Miller* claim for young adult juveniles. *Id.* ¶ 48. The court noted that the claim could be raised in another proceeding, such as one under the Act, where the record could be sufficiently developed to address defendant's claim that *Miller* applied to his particular circumstances. *Id.* ¶¶ 41, 46.

¶ 19 Thereafter, the supreme court considered whether a defendant entering into a plea agreement with the State waived an as-applied *Miller* claim. In *People v. Jones*, 2021 IL 126432, defendant, who was then 16 years old, was charged with multiple offenses, which included first degree murder. *Id.* ¶ 3. In 2000, defendant pled guilty to first degree murder and was sentenced to 50 years' imprisonment pursuant to a fully negotiated guilty plea. *Id.* ¶ 1. Defendant thereafter sought leave to file a successive postconviction petition, arguing that his guilty plea and sentencing predated *Miller*, and the mandatory sentencing scheme that applied to him was void when applied to juveniles. *Id.* ¶ 7. The trial court denied the motion, and the appellate court affirmed. *Id.* ¶¶ 7-10.

¶ 20 Before the supreme court, defendant contended that the sentencing scheme in place at the time of his guilty plea violated the eighth amendment protections in *Miller* because, had he gone to trial and been convicted of two first degree murders, he would have been sentenced to a mandatory life sentence. *Id.* ¶ 15. He further contended that to comply with *Miller*, the trial court was required to use its discretion before imposing a life sentence on a juvenile offender, and since the mandatory life sentence precluded the court from exercising its discretion, it was unconstitutional as applied to him. *Id.* Although defendant conceded that he was not sentenced under that statutory scheme, he maintained that, when he entered into the plea agreement, he did not anticipate that the negotiated 50-year prison term would later be declared a *de facto* life

7

sentence that required the trial court's use of discretion and consideration of his youthful characteristics and rehabilitative potential. *Id.* ¶ 19.

¶ 21     In rejecting defendant's arguments, the supreme court indicated that the parties all correctly understood the law applicable at the time defendant pled guilty, and the crux of defendant's claim was that none of the parties knew that the Supreme Court would later change the criteria for reviewing the constitutionality of the applicable law. *Id.* ¶¶ 1, 19. The court then observed that it was well established that a voluntary guilty plea waived all nonjurisdictional errors or irregularities, including constitutional ones. *Id.* ¶ 20. The court noted that plea agreements were contracts, and principles of waiver applied equally to them. *Id.* ¶ 21. A guilty plea allowed a defendant to gain a present benefit in return for the risk of losing out on future favorable legal developments. *Id.* Thus, the court noted that a guilty plea was a bet on the future. *Id.*

¶ 22     The court then indicated that it was merely speculation that defendant would have been convicted of the most serious charges against him at trial and sentenced to mandatory life without parole. *Id.* ¶ 25. The court concluded that, because defendant entered a guilty plea to avoid a potential, not a certain, sentence, his knowing and voluntary guilty plea waived any constitutional challenge based on subsequent changes in the applicable law. *Id.* ¶ 26. However, the court noted that, had the statutory sentencing scheme actually been applied to set defendant's life sentence, defendant's argument would have presented a claim that could have been reviewed on the legal merits. *Id.* ¶ 18.

¶ 23     Moreover, the court indicated that defendant's *Miller* claims required him to show that the *de facto* life sentence he received was not entered as a result of the trial court's use of its discretion as discretionary life sentences on juvenile offenders were permissible. *Id.* ¶ 27. The court noted that *Miller*'s additional protections for juvenile offenders applied only when a trial court lacked,

8

or refused to use, discretion in sentencing a juvenile offender to a life, or a *de facto* life, sentence. *Id.* ¶ 28. However, a trial court was not required to accept the parties' fully negotiated plea agreement. *Id.* ¶ 27. Thus, because the trial court had the option to accept or reject the plea agreement offered by the parties, its decisions to accept that agreement and enter a 50-year sentence necessarily constituted an exercise of discretion. *Id.* ¶¶ 27-28. Accordingly, the court held that defendant's claims were not cognizable under *Miller*. *Id.* ¶ 28.

¶ 24    Lastly, the First District Appellate Court applied *Jones*'s waiver analysis to open pleas. *People v. Aceituno*, 2022 IL App (1st) 172116, ¶¶ 43-44. There, defendant, who was 18 years old, entered a guilty plea to first degree murder in exchange for the State dismissing the remaining charges against him. *Id.* ¶¶ 4, 20. The trial court then sentenced him to 48 years in prison. *Id.* ¶ 11. On appeal of the denial of his leave to file a successive postconviction petition, defendant argued that his 48-year sentence constituted a *de facto* natural life sentence in violation of the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). *Aceituno*, 2022 IL App (1st) 172116, ¶ 16. Defendant argued that *Jones* had no impact on his constitutional claim because he entered into a blind guilty plea agreement. *Id.* ¶ 43. However, the court concluded that the supreme court's analysis in *Jones* did not turn on whether defendant's plea was fully negotiated or not, but whether the plea was knowing and voluntary. *Id.* ¶ 48. Since defendant did not challenge that his plea was knowing and voluntary, and nothing in the plea proceedings indicated that his plea was anything other than knowing and voluntary, the court found that his plea waived any constitutional challenge based on subsequent changes in the applicable law. *Id.*

¶ 25    Regardless, the court noted that defendant's claim that he entered into a blind plea was not entirely accurate as his plea was negotiated as to charge (in exchange for the plea, the State

9

dismissed the remaining charges against him). *Id.* ¶¶ 44-45. However, the court made clear that the outcome of the case did not hinge on whether the plea was negotiated or blind. *Id.*

¶ 26    In further support of its decision, the court noted that *Jones*'s mandate that *Miller* applied only when a trial court failed to exercise discretion in sentencing a juvenile offender was especially relevant in the case of a blind plea where the trial court explicitly had discretion in sentencing a defendant. *Id.* ¶ 58. Noting that defendant sought a sentence of 40 years while the State requested a term of 60 years, the appellate court concluded that the sentencing court exercised discretion in sentencing defendant to 48 years. *Id.* Accordingly, the court concluded that defendant's claims were not cognizable under *Miller*. *Id.*

¶ 27    Here, the State contends that this case is analogous to *Jones* because the trial court exercised its discretion in lawfully sentencing the defendant to natural life, instead of the death penalty, after accepting his guilty plea. The State argues that the defendant's guilty plea was intelligently made and that he benefitted from pleading guilty, *i.e.*, the additional charges against him were dismissed, and he had the ability to argue for rehabilitation based on his admission of guilt. Also, the State notes that the defendant was eligible for the death penalty, but the court considered his guilty plea when deciding not to impose the death penalty.

¶ 28    In response, the defendant argues that his guilty plea does not bar his *Miller* sentencing claim because, unlike the defendant in *Jones*, he entered into an open or blind plea agreement with no agreement as to his sentence. The defendant contends that, unlike a negotiated plea, an open plea is a one-sided admission of guilt without any sentencing agreement, and it does not form a contract with the State for a sentencing benefit. In support of this argument, he notes that defendants who enter open guilty pleas are allowed to challenge their sentence without being required to withdraw the pleas. He cites *People v. Gooch*, 2014 IL App (5th) 120161, ¶ 24, in

10

which this court held that, if no agreement existed between the parties as to defendant's sentence, then defendant manifestly cannot be breaching a nonexistent agreement by arguing that the sentence was excessive. Thus, the defendant here contends that his entering into an open plea does not waive any future sentencing challenge, constitutional or otherwise.

¶ 29 Moreover, the defendant argues that *Jones* supports this conclusion as the supreme court made clear that, had the defendant in *Jones* been sentenced to natural life under an unconstitutional mandatory sentencing scheme, the court could have reviewed that claim on its legal merits without any issues with waiver. Because the trial court here was bound by a sentencing scheme that afforded no discretion to impose anything less than a natural life sentence, the waiver rule discussed in *Jones* does not apply.

¶ 30 The defendant then indicates that the State does not otherwise deny that his initial postconviction petition raised an arguable claim that his mandatory natural life sentence violated the proportionate penalties clause. Thus, the defendant contends that summary dismissal was improper.

¶ 31 Unlike the defendant in our case, the mandatory sentencing scheme that applied in Illinois at the time that the defendant in *Jones* was sentenced never applied to him because his 50-year sentence was imposed as part of a fully negotiated plea agreement. Instead, the defendant in *Jones* was challenging a hypothetical sentence that could have applied to him if he had not entered into the fully negotiated plea agreement. In contrast, the defendant here is not challenging a hypothetical sentence; he is challenging a mandatory sentencing scheme that applied to him when he was sentenced because he entered into an open guilty plea.[2] Thus, we find that *Jones* does not

---

[2]At the time of the defendant's sentencing, a natural life sentence was the mandatory minimum term since the defendant was convicted of two murders, although the trial court was seemingly not aware of this.

11

preclude this court from reviewing the legal merits of the defendant's claim. See *Jones*, 2021 IL 126432, ¶ 18 (if the statutory sentencing scheme had actually been applied in this case to set petitioner's life sentence, petitioner's argument would have presented a claim that we could have reviewed on its legal merits).

¶ 32    Further, we find *Aceituno* factually distinguishable. There, the trial court had discretion to impose less than a *de facto* life sentence in compliance with *Miller*. In this case, the defendant was subject to a mandatory natural life sentence. The trial court was bound by a sentencing scheme that afforded no discretion to impose anything less than a natural life sentence. We find unpersuasive the State's argument that the court exercised discretion by accepting the defendant's guilty plea and by sentencing the defendant to natural life, rather than imposing the death penalty, after accepting the defendant's guilty plea. Instead, the critical question under *Miller* and its progeny is whether the sentencing court has discretion to consider the mitigating qualities of youth and impose a punishment that is *less than* life in prison, not greater. *People v. Campbell*, 2023 IL App (1st) 220373, ¶ 56; *People v. Wilson*, 2023 IL 127666, ¶ 40.

¶ 33    We also find unpersuasive the State's argument that the defendant's challenge to his sentence was waived because he benefitted from entering into the guilty plea. The State made the decision to dismiss the remaining charges against the defendant, some of which were additional charges of murder that were dismissed because the defendant could only be convicted of two murders. Similarly, the sentencing court made the decision to sentence him to natural life imprisonment rather than impose the death penalty. Neither of these were conditions of the plea agreement that the defendant entered into with the State. Thus, we find that, based on the facts of this case, the defendant's guilty plea does not bar his sentencing claims under *Miller*.

12

¶ 34    As the State does not otherwise deny that the defendant's initial postconviction petition raises an arguable claim that his mandatory natural life term violates the proportionate penalties clause, we conclude that his petition is not frivolous and patently without merit and that it establishes the gist of a meritorious claim. We also grant the defendant's unopposed request for the assignment of a new judge to remove any suggestion of unfairness and order that the case be reassigned to a different judge upon remand. See *People v. Tally*, 2014 IL App (5th) 120349, ¶ 45.

¶ 35                                III. CONCLUSION

¶ 36    For the foregoing reasons, we reverse the summary dismissal of the defendant's postconviction petition, and we remand for the appointment of postconviction counsel and further second-stage postconviction proceedings. Upon remand, we direct the circuit court to designate a new judge for further proceedings.

¶ 37    Reversed and remanded.