2023 IL App (1st) 191309-U

FIFTH DIVISION
April 14, 2023

No. 1-19-1309

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 CR 22049 |
| | ) | |
| SEITH WILLIAMS, | ) | Honorable |
| | ) | Michael McHale, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Justices Navarro concurred in the judgment.
Justice Mitchell concurred in part and dissented in part.

**ORDER**

¶ 1    *Held*:   The trial court's judgment summarily dismissing the defendant's postconviction petition is affirmed.

¶ 2    The defendant-appellant, Seith Williams, filed a *pro se* postconviction petition in the circuit court of Cook County following his conviction for first degree murder alleging, *inter alia*, that his trial counsel was ineffective. The thrust of his allegation of ineffectiveness was trial counsel's failure to file a pretrial motion to suppress Mr. Williams' statement and failure to challenge his 49-year sentence of imprisonment as unconstitutional. The circuit court summarily

dismissed Mr. Williams' postconviction petition at the first stage of postconviction proceedings, and Mr. Williams now appeals. On appeal, we affirmed the judgment stating that Mr. Williams waived his right to an ineffective assistance of counsel claim.

¶ 3    On October 21, 2022, Mr. Williams filed a petition for rehearing. We now modify our decision upon our grant of Mr. Williams' petition for rehearing. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 4                                      BACKGROUND

¶ 5    In 2004, Mr. Williams was charged by indictment, along with his codefendants, Hernandez Holeman and Katrina Battiste, with twenty-six counts of first-degree murder, three counts of armed robbery, four counts of home invasion, and three counts of residential burglary for the August 16, 2004, death of Mattie Battiste,[1] who was the mother of Mr. Williams' girlfriend, Katrina Battiste.[2] Mr. Williams was 21 years old at the time of the offense. In December 2004, court-appointed private counsel, Daniel Coyne, filed his appearance on behalf of Mr. Williams. In January 2005, because the State had filed an intent to seek the death penalty, the trial court appointed additional counsel, Geary Kull, as well as a forensic social worker to assist the defense.

¶ 6    On June 5, 2006, Mr. Williams pleaded guilty to first degree murder of Mattie Battiste. Mr. Williams' guilty plea stated that, along with his codefendants, he "without lawful justification, intentionally or knowingly strangled and inflicted multiple injuries which killed Mattie Battiste, *** [and] the murdered individual was actually killed during the course of an underlying felony, to wit: armed robbery, in violation of chapter 720 Act 5 Section 9-1(a)(1)." The State entered a

_____

[1]We use the victim's first name since the victim and one of the codefendants share a last name.
[2]In the interest of clarity and brevity, only those facts of the crime necessary to resolve this appeal will be presented, as most of the details of the crime itself are irrelevant.

*nolle prosequi* on the remaining charges.

¶ 7     Mr. Williams' guilty plea resulted in a sentencing range of 20 years' imprisonment to the death penalty. Following a sentencing hearing, the trial court sentenced Mr. Williams to 49 years' imprisonment. The trial court then admonished Mr. Williams that he had a right to appeal his sentence, but that in order to do so, he must first move to withdraw his guilty plea within 30 days. Mr. Williams did not file a motion to withdraw his guilty plea and did not file a direct appeal.

¶ 8     On February 27, 2019, Mr. Williams filed a *pro se* postconviction petition, which is the subject of this appeal. Mr. Williams' postconviction petition made the following claims: (1) his guilty plea was void because the factual basis of the plea was a coerced confession by an assistant state's attorney; (2) his counsel rendered ineffective assistance by failing to file a pretrial motion to suppress Mr. Williams' confession; (3) his counsel rendered ineffective assistance by failing to file a pretrial motion "to [] suppress [Mr. Williams'] video-taped statement taken during a police-initiated interrogation in which the 'question first, warn second' technique deprived him of a free and rational choice about whether to speak ***, [and] violated his fifth amendment privilege against self-incrimination [to not] give a statement," because "he did not have a real choice to decline to make the second statement due to the compulsion by" the assistant state's attorney; and (4) based on recent case law from this court concerning the sentencing of young adults, he is entitled to a lesser sentence since he was 21 years old at the time of his offense. In support of his petition, Mr. Williams attached numerous documents: an affidavit from himself; an affidavit from Katrina Battiste; a transcript of the first few minutes of his videotaped confession; and a partial transcript from his plea and sentencing hearings.

¶ 9     Aside from his claim challenging his 49-year sentence, all of Mr. Williams' claims were based on the following allegations in his petition. On August 17, 2004, police officers arrived at Mr. Williams' sister's apartment and asked to speak with Mr. Williams' girlfriend, Katrina, in connection with the death of her mother. The police officers did not request to also speak with Mr. Williams, but he asked them if he could accompany Katrina to the police station "to provide emotional support" for her interview with the police. The police officers granted his request.

¶ 10     According to Mr. Williams, however, once at the police station, the police separated him from Katrina and directed him to an interrogation room alone. Once inside the interrogation room, detectives began interrogating him about the statement he had given the day before regarding the death of Mattie Battiste. Mr. Williams confirmed his previous statement, and the detectives left him alone in the locked interrogation room for approximately five minutes. When the detectives returned, they took Mr. Williams' cell phone and keys and handcuffed him to the wall. Mr. Williams was never given any *Miranda* warnings.

¶ 11     Mr. Williams' postconviction petition continued that he was detained in the interrogation room for 48 hours. Over that time, he invoked his right to remain silent and his right to counsel numerous times, but the detectives and an assistant state's attorney nonetheless questioned him two more times. At one point, the assistant state's attorney "slapped [Mr. Williams] on the side of the head" with several photographs, raised his voice, pointed his fingers in Mr. Williams' face, and threatened to take away Mr. Williams' unborn child and his sister's children if he "did not start talking." Eventually, Mr. Williams gave "his inculpatory statement" that was "created by a subtly coercive environment in which his will was overcome," and therefore, his statement was not voluntary. After being in the interrogation room for a lengthy period of time, Mr. Williams

was finally read his *Miranda* rights for the first time. Mr. Williams waived his *Miranda* rights and gave a videotaped statement in which he confessed to murdering Mattie Battiste.

¶ 12    Mr. Williams' postconviction petition argued that he received ineffective assistance of trial counsel when counsel advised him to plead guilty instead of moving to suppress the confession. In his affidavit attached to his postconviction petition, he asserted that he told his trial counsel on two separate occasions the circumstances behind his inculpatory statement, but during each meeting, his counsel said he was still waiting for discovery and would address Mr. Williams' concerns when he was more familiar with the case. During their third meeting, his trial counsel suggested Mr. Williams take a plea because of the inculpatory statement that Mr. Williams made to officers. Mr. Williams did not state that his counsel's advice was the reason that he pleaded guilty. Instead, he argued that the coerced confession "carried over to taint the guilty plea, [as] the conviction was based on the factual basis of the prior statement, as offered proof by the prosecution. An adduced confession cannot form the factual basis of a voluntary guilty plea as contemplated by Illinois Supreme Court Rule 402(c)."

¶ 13    In his additional claim alleging that his 49-year sentence of imprisonment is unconstitutional, Mr. Williams cited recent case law from the United States Supreme Court as well as this court, all stemming from *Miller v. Alabama*, 132 S. Ct. 2455 (2012). His arguments concerned the development of young adult brains and its impact on sentencing, contending that that because he was 21 years old and had other "developmental challenges" at the time of the murder, he should receive a reduced sentence pursuant to the tenets of *Miller*.

¶ 14    On May 3, 2019, the trial court entered a written order summarily dismissing Mr. Williams' postconviction petition. The order stated:

"The pre-trial issues were known to [Mr. Williams] prior to his plea and thus, are waived. Further, *Miller* applies to defendants 18 years and younger. [Mr. Williams] was 21 years old at the time of the offense. His petition and issues presented are frivolous and patently without merit and [the petition] is therefore dismissed."

This appeal followed. On October 21, 2022, Mr. Williams filed a petition for rehearing arguing that various United States Supreme Court and Illinois cases support his argument that ineffective assistance of counsel claims cannot be waived. Also, Mr. Williams alleged that a plea after a coerced confession is "*by definition*, involuntary."

¶ 15                                    ANALYSIS

¶ 16    Although Mr. Williams' *pro se* notice of appeal was not filed until June 6, 2019, (34 days after the trial court's judgment), Mr. Williams certified that he placed the notice of appeal in the prison mail system on May 30, 2019, and the postage stamp was dated June 3, 2019. This was a timely notice of appeal pursuant to Supreme Court Rule 12(b)(6) (eff. July 1, 2017), which provides that service is proved: "in case of service by mail by a self-represented litigant residing in a correctional facility, by certification under section 1-109 of the Code of Civil Procedure of the person who deposited the document in the institutional mail, stating the time and place of deposit and the complete address to which the document was to be delivered." We, therefore, have jurisdiction to consider this appeal.

¶ 17    Mr. Williams presents the following issue for our review: whether the trial court erred in summarily dismissing his postconviction petition. He argues that the factual allegations in his petition made an arguable claim that he was denied effective assistance of counsel when his trial

counsel advised him to plead guilty instead of moving to suppress his confession. Mr. Williams avers that such a motion to suppress would have been meritorious because his confession was: involuntary; the product of an illegal arrest; elicited without proper *Miranda* warnings; and\or elicited after he invoked his right to remain silent. So according to Mr. Williams, his counsel should have moved to suppress his confession. He argues that the failure to do so was evidence of ineffectiveness. Mr. Williams additionally alleges that his postconviction petition made the arguable claim that his 49-year sentence of imprisonment is an unconstitutional *de facto* life sentence because he was 21 years old at the time of the offense. He submits that his individual characteristics at the time reflected the mitigating qualities of youth such that he is entitled to a lesser sentence pursuant to the tenets of *Miller*. Asserting that his *pro se* postconviction petition stated the gist of two different constitutional claims, he alleges the trial court erred in dismissing it.[3] He asks us to reverse the trial court's summary dismissal of his postconviction petition and remand this case for second stage postconviction proceedings.

¶ 18    The Post-Conviction Hearing Act provides a procedural mechanism by which a criminal defendant can assert that his constitutional rights were substantially violated in his original trial or sentencing hearing. 725 ILCS 5/122-1 (West 2018); *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). A postconviction proceeding contains three distinct stages. *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 22. The first stage concerns the sufficiency of the allegations of the petition. Section 122-2 of the Act requires that a post-conviction petition must "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2012). In a non-

---

[3]Although Mr. Williams' postconviction petition pleaded other claims, he does not raise those claims on appeal.

capital case, the Act directs that "[i]f *** the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision." 725 ILCS 5/122-2.2(a)(2) (West 2012). Thus, at the first stage of a post-conviction proceeding, the trial court reviews the petition to "determine whether the petition is frivolous or patently without merit." (Internal quotation marks omitted). *People v. Tate*, 2012 IL 112214, ¶ 9. The trial court may dismiss a petition during the first stage if the court determines that the petition is frivolous or patently without merit. *Gallano*, 2019 IL App (1st) 160570, ¶ 22. As most postconviction petitions are drafted by *pro se* defendants, the threshold for a petition to survive the first stage of proceedings is low. *People v. Allen*, 2015 IL 113135, ¶ 24. We review *de novo* a trial court's first-stage dismissal of a postconviction petition. *People v. Shipp*, 2015 IL App (2d) 131309, ¶ 7. "Under the de novo standard of review, this court owes no deference to the trial court." *People v. Williams*, 2013 IL App (1st) 111116, ¶ 75.

¶ 19    The first claim in Mr. Williams' postconviction petition is that he received ineffective assistance of counsel when his counsel advised him to plead guilty instead of first moving to suppress his confession.

¶ 20    Illinois caselaw is clear that a "voluntary guilty plea waives all nonjurisdictional errors, including constitutional defects." *People v. Johnson*, 2021 IL App (1st) 152310, ¶ 21. "A valid guilty plea also renders irrelevant—and thereby prevents the defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is entered." *Class v. U.S.*, 138 S. Ct. 798, 805 (2018). "[A] plea of guilty in a state court is not subject to collateral attack in a federal court on the ground that it was motivated by a coerced confession unless the defendant was incompetently advised by his attorney." *McMann v. Richardson*, 397

U.S. 759, 772 (1970). The question of whether a plea of guilty is unintelligent and thus vulnerable to attack is not based on whether a court would retrospectively consider trial counsel's advice incorrect but on whether it falls within the "range of competence demanded of attorneys in criminal cases." *McMann*, 397 U.S. at 770-71.

¶ 21    In Mr. Williams' petition for rehearing, he argues that this court erred in citing People v. Smith, 2021 IL App (5th) 180196 (unpublished order under Supreme Court Rule 23),[4] for the proposition that Mr. Williams waived his ineffective assistance of counsel claim because he pleaded guilty. In support of his argument, he cites *McMann v. Richardson*, 397 U.S. 759 (1970), *Tollett v. Henderson*, 411 U.S. 258 (1973), *Premo v. Moore*, 562 U.S. 115 (2011), and *People v. Mendez*, 336 Ill. App. 3d 935, 939 (2003). We briefly address each.

¶ 22    In *McMann*, 397 U.S. at 767, the Supreme Court reviewed whether a counseled defendant, whose confession is the reason he decided to plead guilty, was entitled to habeas corpus relief if the confession was coerced. The Court distinguished that scenario from another scenario, where the defendant has his own reasons for pleading guilty regardless of the strength of the State's case. *McMann*, 397 U.S. at 767. In the later instance, the defendant *is not entitled* to relief after a plea, *even if the confession given was coerced. McMann*, 397 U.S. at 767. The Court recognized that in those circumstances, at best, the defendant could argue that he or she was mistakenly advised by counsel about the admissibility of the confession, which made the plea of guilty unintelligent. *McMann*, 397 U.S. at 768. However, the Court was not convinced that was a cognizable claim under the law since guilty pleas are not so vulnerable to collateral attacks. *McMann*, 397 U.S. at

---

[4]Unpublished orders from the Illinois Appellate Court entered after January 1, 2021, may be cited for persuasive purposes. Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021).

769. The Court held that a "guilty plea based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession." *McMann*, 397 U.S. at 770. The question of whether the advice was reasonably competent is not one looked at retrospectively but, *at the time of the advice*, whether counsel's decision or advice fell within the range of competence of criminal defense attorneys. *McMann*, 397 U.S. at 770-71. The Court determined the question to be whether counsel's allegedly erroneous advice induced the plea. *McMann*, 397 U.S. at 771. The Court also noted that "a defendant who alleges that he pleaded guilty because of a prior coerced confession is not, *without more*, entitled to a hearing on his petition for habeas corpus." *McMann*, 397 U.S. at 771.

¶ 23    In *Tollet*, 411 U.S. at 265, the Supreme Court reviewed whether the defendant, who was African-American, could attack the voluntary and intelligent nature of his plea since the grand jury who indicted him allegedly impermissibly excluded African-Americans and this fact was not known until after his plea. Like Mr. Williams, the defendant sought to challenge an issue which arose prior to the plea of guilty. The Court drew the distinction between this case and *McMann* since in the case of the defendant of *McMann*, all the facts were known prior to his plea of guilty. However, the Court held that while the defendant could not waive an issue he was not aware existed, the defendant after pleading guilty could not directly attack any constitutional violation, which occurred prior to the plea. *Tollet*, 411 U.S. at 266 ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process"). The Court found that to succeed on the federal habeas corpus claim under the circumstances, the defendant had to establish unconstitutional discrimination in the selection of grand jurors *and* that counsel's advice to plead guilty without inquiring into the composition of the grand jury was outside the range of

competence of criminal defense attorneys. *Tollet*, 411 U.S. at 268.

¶ 24    In *Premo*, 562 U.S. 115, factually the closest case to Mr. Williams, the Supreme Court faced the question of the adequacy of a trial counsel's representation regarding a plea bargain when it did not first move to seek a suppression of a confession which was allegedly improper. The Court held that to succeed on an ineffective assistance of counsel claim under those circumstances, the defendant had to show both that counsel's performance was deficient and that he was prejudiced by the performance or decision not to file a motion to suppress. "In applying and defining this standard, substantial deference must be accorded to counsel's judgment." *Premo*, 562 U.S. at 126. The Court noted that the stakes for a defendant pleading guilty early in a case are high and some defendants may choose to forgo the right to assert their innocence, when balancing between the possibility that the State's case can get stronger and benefits of a plea to a potential lesser charge or reduced sentence. *Premo*, 562 U.S. at 129.

¶ 25    In *Mendez*, 336 Ill. App. 3d 935, which was before the Third District of the Illinois Appellate Court, the defendant sought to withdraw his plea and raised a defense of entrapment. Unlike Mr. Williams, the defendant sought to withdraw his plea, due to his possible defense. The defendant also alleged that he only met with his attorney on two occasions and that during both meetings he urged him to plead guilty, without informing him of potential defenses. The Third District determined that the defendant who pleaded guilty was entitled to a second stage proceeding on his postconviction claim, which alleged ineffective assistance of counsel. The court held that while a plea typically waives nonjurisdictional issues, ineffective assistance of counsel is an exception to the waiver rule and a plea is only voluntary if entered with the assistance of competent counsel. *Mendez*, 336 Ill. App. 3d at 939. As stated, a guilty plea generally results in

waiver of challenges *which are not related to the voluntariness of the plea*. *Mendez*, 336 Ill. App. 3d at 939.

¶ 26 Importantly, Mr. Williams does not attack the nature of his guilty plea, such as claiming that he was threatened into pleading guilty or that he failed to understand the charges, nor did Mr. Williams move to withdraw his guilty plea. Moreover, his claim of ineffective assistance of counsel does not revolve around the *voluntariness* of his plea. See, *e.g., Mendez*, 336 Ill. App. 3d at 939 (the defendant alleged the gist of a constitutional claim that his plea was involuntary because his attorney was ineffective in failing to inform him of the defense of entrapment). Rather, Mr. Williams claims that his trial counsel was ineffective for not moving to suppress his confession considering the circumstances surrounding his confession. This is an important distinction from claiming that his counsel was ineffective for failing to ensure that his plea was made voluntarily and intelligently. See *People v. Hall*, 217 Ill. 2d 324, 335 (2005) (in the context of a guilty plea, an attorney's conduct is deficient if the attorney failed to ensure that the defendant's guilty plea was entered voluntarily and intelligently); See also *People v. Smith*, 383 Ill. App. 3d 1078, 1086 (finding that the defendant did not attack her guilty plea but instead argued ineffective assistance of counsel for failure to present a defense of compulsion, thereby waiving her claims because she pleaded guilty).

¶ 27 Here, Mr. Williams is not claiming actual innocence or newly discovered evidence. At the time of the plea, all parties were aware of the incriminating statement. Mr. Williams is now, on appeal, making the argument that his trial attorney induced his plea by failing to provide legal advice about the suppression of his confession but he did not make that claim in his postconviction petition. As the State points out, Mr. Williams' alleged error arose because his trial attorney failed

to challenge the admissibility of his confession, which is a claim that was waived when petitioner pleaded guilty. While Mr. Williams did claim in his postconviction petition that his attorney " 'suggested that [he] take a plea, because of the alleged self-incrimination,' importantly, Mr. Williams did not claim that he chose to plead guilty because his attorney was mistaken about the admissibility of the confession."

¶ 28    While Mr. Williams mentioned that trial counsel advised him that he should plead guilty, in part because of his confession, that explanation does not give us insight into Mr. Williams' motivations for pleading guilty. In the litany of cases that Mr. Williams cites in his petition for rehearing, the question raised is whether the defendant would have proceeded to trial *but for the representation of the attorney*, who provided incompetent advice. That is not the case here. Mr. Williams does not state this advice was the basis of the plea; therefore, this challenge is more akin to a collateral attack on the confession, which is impermissible at this stage. *McMann*, 397 U.S. at 766-69. Mr. Williams' allegations are similar to the defendant in *People v. Johnson*, 2021 IL App (1st) 152310.

¶ 29    In *Johnson*, 2021 IL App (1st) 152310, ¶¶ 8-9 the defendant challenged, in a successive postconviction petition that he confessed to a crime he did not commit and gave officers a coerced confession because of the abuse and torture they imposed on him. The defendant asserted in his postconviction petition that the coerced confession rendered his plea involuntary and not knowingly made since the confession served as the sole factual basis for the plea of guilty. *Johnson*, 2021 IL App (1st) 152310, ¶ 9. The trial court denied the defendant's successive postconviction petition, and this court reviewed the trial court's denial. *Johnson*, 2021 IL App (1st) 152310, ¶ 14. This court acknowledged that a guilty plea waives all nonjurisdictional claims.

*Johnson*, 2021 IL App (1st) 152310, ¶ 25. This court found that it was irrelevant to its waiver analysis that the guilty plea was solely based on the defendant's alleged coerced confession. *Johnson*, 2021 IL App (1st) 152310, ¶ 25; See *People v. Anderson*, 375 Ill. App. 3d 121, 133 (2007) (stating that since the defendant voluntarily pleaded guilty, his claim that his due process rights were violated due to a coerced confession were waived.); see also *People v. Stice*, 160 Ill. App. 3d 132, 138 (1987) (This court found "that while the prosecutor referred to the defendant's confession in reciting the factual bases of defendant's crimes to the court, it is apparent that the defendant, in pleading guilty, acknowledged the truth of the facts contained in the confession-and not just the fact that he made a confession."). This court explained that the only method, by which a defendant can challenge their guilty plea based on constitutional issues and overcome the waiver of a plea, is by saying they were incompetently advised by counsel *to plead guilty*. *Johnson*, 2021 IL App (1st) 152310, ¶ 26. This court found that the defendant waived his claim of regarding the coerced confession because he did not allege that ineffective assistance of counsel led him to plead guilty. *Johnson*, 2021 IL App (1st) 152310, ¶ 27.

¶ 30     We find likewise to the court in *Johnson*, 2021 IL App (1st) 152310, ¶ 25. As Mr. Williams did not claim the purported ineffective assistance of counsel regarding counsel's advice led to his decision to plead guilty, he cannot now challenge it in a postconviction petition, and we find that Mr. Williams waived this claim by pleading guilty. *McMann*, 397 U.S. at 767; See *Smith*, 383 Ill. App. 3d at 1086.

¶ 31     However, even if we did not find that Mr. Williams waived this claim and proceeded to a *Strickland* analysis, Mr. Williams' claim would still fail. A defendant's claim of ineffective

assistance of counsel is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Henderson*, 2013 IL 114040, ¶ 11.

¶ 32    To prevail on a claim of ineffective assistance of counsel, "a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). To establish deficient performance, a defendant must show his attorney's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194, 219 (2004) (citing *Strickland*, 466 U.S. at 687). "Effective assistance of counsel refers to competent, not perfect representation." *Evans*, 209 Ill. 2d at 219 (quoting *People v. Stewart*, 104 Ill. 2d 463, 491-92 (1984)). Mistakes in trial strategy or tactics do not necessarily render counsel's representation defective. See *People v. Hayes*, 2021 IL App (1st) 172417, ¶ 78 (finding that the decision to not file a motion to suppress is typically a matter of trial strategy, in which courts of review give great deference to counsel's decision).

¶ 33    To establish the second prong of *Strickland*, prejudice, a defendant must show that "but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different." *People v. Houston*, 229 Ill. 2d 1, 4 (2008). "To establish prejudice in the guilty plea context, 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *People v. Valdez*, 2016 IL 119860, ¶ 29 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35.

¶ 34    Mr. Williams does not argue that counsel's advice regarding his plea contributed to his decision to plead guilty. Instead, he argues that trial counsel rendered ineffective assistance of

counsel by failing to file a motion to suppress his confession. Regarding the analysis for the prejudicial prong of the *Strickland* test, Mr. Williams fails to state in his postconviction petition and the record is silent as to whether he would not have pleaded guilty and instead proceeded to trial except for counsel's mistake. Mr. Williams does not assert that he would have proceeded to trial if his confession was suppressed. When balancing between the possibility of death or life in prison against a determinate set of years imprisonment, Mr. Williams may have decided the less risky approach was a better option and counsel's trial strategy may not be seen as substandard representation under those parameters. See *Premo*, 562 U.S. at 129.

¶ 35    Mr. Williams' other claim in his postconviction petition is that his 49-year sentence is unconstitutional pursuant to the proportionate penalties clause of the Illinois Constitution. His argument is premised upon recent case law governing the sentencing of juveniles and young adult offenders, which is an evolving area of law stemming from the United States Supreme Court case, *Miller*, 132 S. Ct. 2455.

¶ 36    While there has been a recent trend to expand *Miller's* sentencing protections for juveniles to young adult offenders, pursuant to the proportionate penalties clause of the Illinois Constitution, *presently* the case law strictly applies to young adult offenders *under the age of 21*. See *People v. Humphrey*, 2020 IL App (1st) 172837, ¶ 33 (while there has been an expansion of the *Miller* protections, those expansions have been restricted to individuals who were between 18 and 20 years old). And it is undisputed that Mr. Williams was 21 years old when he committed the murder. Thus, the *Miller* tenets which Mr. Williams relies upon cannot be applied to him. We recognize that the evolving science of brain development may support *Miller* claims for those over 20 at some point in the future; but as this court has previously noted, such an expansion should be

made by the legislature or the Illinois Supreme Court. *People v. Rivera*, 2020 IL App (1st) 171430, ¶ 27. "[F]or now[,] individuals who are 21 years or older when they commit an offense are adults for purposes of a *Miller* claim." *Humphrey*, 2020 IL App (1st) 172837, ¶ 33. As such, Mr. Williams' constitutional challenge to his 49-year sentence is meritless.

¶ 37    In sum, we find Mr. Williams' postconviction petition without merit and affirm the trial court's dismissal of his petition at the first stage.

¶ 38                                    CONCLUSION

¶ 39    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 40    Affirmed.


¶ 41    JUSTICE MITCHELL, concurring in part and dissenting in part:

¶ 42    It is hornbook law that the forfeiture which attaches to legal errors preceding a voluntary guilty plea does *not* extend to defects implicating the plea itself. See 5 Wayne R. LaFave *et al.*, Criminal Procedure § 21.6(a) (4th ed. Nov. 2022 Update) ("the forfeiture rule *** has no application to defects *** concerning advice of counsel, *** interference with counsel, *** or circumstances which make the plea other than voluntary, knowing and intelligent."). The Supreme Court acknowledged in *McMann v. Richardson*, 397 U.S. 759, 767 (1970), that "a guilty plea is properly open to challenge" if, for example, "the circumstances that coerced the confession have abiding impact and also taint the plea." See *id.* at 772 ("[A] plea of guilty in a state court is not subject to collateral attack in a federal court on the ground that it was motivated by a coerced confession *unless the defendant was incompetently advised by his attorney*." (emphasis added)).

Our Illinois Supreme Court has similarly recognized that erroneous legal advice provided prior to a guilty plea can render the plea involuntary:

> "If the defendant's pleas were made in reasonable reliance upon the advice or representation of his attorney, which advice or representation demonstrated incompetence, then it can be said that the defendant's pleas were not voluntary; that is, there is not a knowing and intelligent waiver of the fundamental rights which a plea of guilty entails." *People v. Correa*, 108 Ill. 2d 541, 549 (1985).

See also *People v. Palmer*, 162 Ill. 2d 465, 474 (1994) ("Resolution of the question of whether a defendant's pleas, made in reliance on counsel's advice, were voluntary and knowing depends on whether the defendant had effective assistance of counsel.").

¶ 43 Did our defendant Seith Williams allege that he relied on incompetent legal advice in deciding to plead guilty? Mr. Williams' complaint is that his confession was coerced and that despite raising the issue repeatedly with his attorney, counsel failed to bring a motion to suppress. Ultimately, counsel recommended that Mr. Williams plead guilty: "On June 5, 2006, Petitioner was approached by counsel, who suggested that Petitioner take a plea, because of the alleged self incrimination." On that same day, Mr. Williams followed his lawyer's advice and pled guilty. Further, the petition alleges the following relationship between the plea and counsel's allegedly poor performance:

> "Petitioner was denied effective assistance of counsel when counsel failed to raise [the coerced confession] and *** Petitioner was prejudice [*sic*] as it is a violation of due process of law to stand convicted upon a factual basis in support of a guilty plea that is as a matter of law void.

\*\*\*

The record does not positively rebut that the basis of the guilty plea was 'arguably' petitioner's confession, thus these well plead [*sic*] facts must be taken as true \*\*\*.

\* \* \*

Here it is arguable had trial counsel moved to suppress \*\*\* there is a reasonable probability that the pretrial motion would have been granted, counsel's failure was objectively unreasonable \*\*\*.

\* \* \*

[T]he factual basis for the guilty plea was the confession which arguably not 'purge of the primary taint of the unlawful arrest.' "

¶ 44 While not a model of clarity, the petition was prepared *pro se* by an individual without legal training. Our cases recognize that such petitions should be construed liberally. *E.g.*, *People v. Brown*, 236 Ill. 2d 175, 188 (2010) (rejecting the "strict reading" of a first-stage petition as inconsistent with the liberal construction standards); *People v. Hodges*, 234 Ill. 2d 1, 21 (2009) ("Where defendants are acting *pro se*, courts should review their petitions 'with a lenient eye.' "). Given that lenient standard, Mr. Williams has alleged enough to satisfy that purposely low threshold of a "gist of a constitutional claim." See *People v. Ligon*, 239 Ill. 2d 94, 104 (2010). At the first stage, by design, there are limited bases for summarily dismissing a petition as relying on an "indisputably meritless legal theory or a fanciful factual allegation."[5] *Hodges*, 234 Ill. 2d at 16.

---

[5]It is improper to consider "trial strategy" or "substantive" legal questions in analyzing claims of ineffective assistance of counsel at the first stage. *People v. Wilson*, 2014 IL App (1st) 113570, ¶ 46 ("[W]e do not consider arguments related to strategy when reviewing first-stage postconviction petitions."); *People v. Smith*, 326 Ill. App. 3d 831, 839-40 (2001) ("Substantive questions relating to the issues raised in the

¶ 45 Despite clear black letter law that creates an exception to the general forfeiture rule for an ineffective assistance of counsel claim interlocking with a guilty plea, confusion nonetheless abounds. For example, the circuit court here summarily declared without any reasoned elaboration, "The pre-trial issues were known to the petitioner prior to his plea and thus, are waived." That is an incorrect statement of law because it is incomplete: it fails to acknowledge the exception squarely at issue in this case. And we, too, committed a similar analytic error, which prompted the original panel to which this case was first submitted to vacate its decision and grant Mr. Williams' petition for rehearing. Order Granting Petition for Reh'g, People v. Williams, No. 1-19-1309 (Nov. 9, 2022).

¶ 46 Because I conclude that Mr. Williams has alleged a gist of a constitutional claim related to ineffective assistance counsel and his guilty plea, I would reverse the trial court's summary dismissal, and I would remand the petition for second-stage consideration. I agree and join the majority's analysis and judgment as to Mr. Williams' proportionate penalties argument.

---

petition are not to be addressed at the first stage."). Those are considerations for the second stage after the State has answered the petition and the defendant has appointed counsel. 725 ILCS 5/122-4, 122-5 (West 2018); *People v. Pendleton*, 223 Ill. 2d 458, 472-73 (2006) (at the second stage, the defendant is afforded the advantages of appointed counsel, and the State may move to dismiss or answer the petition).